THE TOWN OF CLAY, Respondent, *v.* ADONIRAM HART, Appellant.

(County Court, Onondaga County, October, 1898.)

1. **Towns — Nuisance caused by an unsafe highway bridge built by the former owners of a mill race-way — Repairs, to the bridge, made by the town are collectible of the present mill owner — Primary duty to repair.**

   The present owner of a mill, one of whose predecessors in the title, in order to operate the mill, dug a raceway through a highway and built across it a bridge, made necessary by the raceway, is primarily liable to repair the bridge; and, where it becomes unsafe, it is a nuisance which the town may, upon the refusal of the owner, abate by itself repairing the bridge, and this expense may be recovered by the town from the present owner of the mill, although he testifies upon the trial of the action that he had no actual notice that there was any obligation resting upon the owner of the property to keep the bridge in repair.

2. **Same — Former adjudication.**

   Such an action is not barred by the present mill owner's recovery of judgment, in an action of a similar nature, improperly brought against him by the town highway commissioner in his own name as such, instead of in the name of the town, as the parties to the actions are not the same, and the town was not heard in the first action.

THIS is an appeal from a judgment rendered by a justice of the peace in favor of the above-named plaintiff and against the defendant of $31.76 damages, together with costs upon the following state of facts:

Prior to 1875, a company commenced the erection of a grist-mill in one of the towns of this county. To obtain water to propel the machinery in the mill, a race was dug through the premises belonging to the company and across a much-traveled public highway. It was stated by some one at the time to the owners of the mill that if they dug a race-way they would have to cover it up. The company partially dug the race-way, built a bridge across it upon the highway and began the erection of a mill. The premises were then transferred by the company by deed to one Gilbert, who completed the excavation of the race-way and finished the mill and used both during the period of his ownership. After Gilbert began to operate the mill the commissioner of highways said to him, " That

the mill would be such a help to that part of the town that they would keep it (bridge) in repair; " but no agreement in relation thereto was made. Gilbert had knowledge of all the facts in relation to the digging, and the purpose of the race-way. After three or four years he substantially repaired the first bridge by building stone abutments and kept the same in repair during his ownership of the property, a period of some nine years. Some of those repairs were made after notification and request so to do by the town of Clay, the plaintiff. It does not appear to whom Gilbert sold the premises, but there was at least one intermediate owner between Gilbert and the defendant. In 1879, the defendant leased the premises of the then owner, and in 1882 purchased the same by deed of one Case, and the defendant has been in possession of the premises from 1879 until the time of the trial. · In 1880, while the defendant was in possession of the premises, as lessee, there was a conversation had between the then commissioner of highways of the town of Clay and the defendant, relative to the condition of the bridge, which at that time needed repairs, in which conversation the defendant said he had been notified that the bridge needed repairs and would fix it; said conversation was denied by the defendant upon the trial. There was also some conflict of evidence as to whether the town of Clay had at any time paid for repairs to this bridge.

The evidence is not very clear upon the subject, but probably the defendant, in 1885, at that time being a pathmaster of the town of Clay, rebuilt the bridge in question at an expense of $350, for which amount he presented a bill to the town, which was at first allowed by the auditing board but, subsequently, upon learning that it was for repairing or rebuilding the bridge in question, was rejected and has never been paid. The defendant testified, upon the trial below, that he was in possession of the property three years before its purchase; that he knew that the race-way was used for the purpose of the mill; that he didn't know whether it was an artificial or natural channel, but testified that he did know in 1869, that there was no race-way there; that he understood that he purchased the race and power with the mill; that he had no actual notice that there was any obligation resting on the owner of the property to keep the bridge in repair. After notice to the defendant and refusal by him to repair, the town of Clay, in which the bridge is situated, made the repairs and recovered below for the ·amount so expended. .

County Court, Onondaga County, October, 1898.     [Vol. 25.

Before the commencement of this action an action was commenced before the same justice of the peace by " Eugene Delong, as commissioner of highways of the town of Clay," against the defendant.   The complaint in the first action was substantially the same as in this.   The case was tried and a judgment rendered in favor of the defendant for costs, $6.55.

It is claimed by the defendant that the judgment in the first action is a bar to this, and also that the facts disclose no ground for recovery, and that this suit was improperly brought upon the suggestion of the supervisor.

Francis David, for appellant.

J. R. Shea, for respondent.

Ross, J.   I. Action properly brought.— It appears from the justice's minutes that the supervisor appeared for the town upon the adjourned day.   Such appearance was unnecessary as the plaintiff appeared by his counsel, J. R. Shea, both at the time of joining issue and also upon the adjourned day.   The counsel upon each occasion swore to his authority.

Section 15 of the Highway Law provides that:   " The commissioners of highways may bring an action in the name of the town, against any person   *   *   *   to enforce the performance of any duty enjoined upon any person   *   *   *   and to recover any damages sustained   *   *   *   by such town, in consequence of any act or omission of any such person   *   *   *   in violation of any law or contract in relation to such highway."   People ex rel. Cocheu v. Dettmer, 26 App. Div. 328.

Eugene Delong, the commissioner of highways of the town of Clay, was sworn as a witness upon the trial of this action.   He had previously brought an action in his own name as commissioner of highways before the same justice and against the same defendant in which he alleged substantially the same facts as alleged in the complaint in this action.   In the first action he was unsuccessful. This action being properly brought in the name of the town an appellate court will not presume in view of the foregoing facts that the commissioner of highways of the town of Clay did not bring this action; especially in view of the fact that the bringing of such a suit, if a cause of action exist, pertained to the duties of his office.

II. Former action not a bar.— The judgment in the action of

Eugene Delong, as commissioner of highways of the town of Clay, against the defendant is not a bar to this action. A judgment for want of proper parties is not a judgment on the merits. Freeman on Judgments, §§ 263 and 266. The section last quoted is as follows: " The third subdivision (where the proper parties are not before the court) is applicable to cases in which the want of proper parties, either plaintiff or defendant, is apparent from an inspection of the record; and also to cases where, though the proper parties apparently come before the court, one or more of them has no capacity to sue."

Neither is a misconceived action a bar. The mistaking of his action by a plaintiff is not a bar nor estoppel to bring his true action. Freeman on Judgments, § 265; Robinson's case, vol. 3; Coke's Reports, 33 A. Mr. Freeman, in section 265, uses the following language: " The exception which takes these cases (where the action is misconceived) out of the general rules in relation to estoppel is a very important one, saving the plaintiff from the loss of his claim, through any error or judgment on the part of his attorney in determining what form of action is best suited for the enforcement of the plaintiff's rights."

But further the parties are not the same. " It is just as important that the parties to both suits should be acting in the same capacity in each, as that the parties should be the same." 21 Am. & Eng. Ency. Law, 136; Duchess of Kingston's case (1776), 3 Smith's Leading Cases, 1998; Metters v. Brown, 1 Hurl. & C. 686; Leggott v. Great N. R. Co., 1 L. R., Q. B., 599; Eshelman v. Shuman, 13 Penn. St. 561; Alexander v. Taylor, 4 Den. 302; Freeman on Judgments, § 156. In the case of Alexander v. Taylor, it was held that " Where the defendant in an action of trover, had recovered judgment in replevin for the same property, against J. W. S., who was in the employment of the plaintiff in the first-mentioned suit, and who set up in his defense that the property belonged to his employer, and that he took it as his servant and agent; that the record of the former recovery was not admissible in the action of trover."

In the case of Eshelman v. Shuman it was held that a suit by the president of the Orphans' Court, for the use of the assignee of the husband for an amount of the share of the wife, is no bar to recovery in the name of the same officer for the use of the wife and her husband, as her trustee.

For the foregoing reasons no question of privity of estate (which was argued by the attorney for the appellant) can arise. If the party would not be bound those in privity of estate with him are not bound; but there is no privity of estate between Eugene Delong, as commissioner of highways of the town of Clay, and the town of Clay. The first action brought by Eugene Delong being unauthorized there was no estate to devolve.

III. Rights and obligations of the defendant in respect to the highway.— The plaintiff being properly in court, and it being held that the former action referred to is not a bar to this, the principal question is, has the defendant omitted any duty, or violated any contractural obligation, actual or implied, which he owes to the plaintiff? It does not appear from the evidence whether the water-course across the highway is now necessary, but from the fact that a bridge is necessary, and the water-course still remains, it must be assumed that the water-course across the highway still continues for the benefit of the owner.

The town cannot recover as upon a covenant running with the land, for there is no covenant; and if a recovery can be had upon a right by prescription, which is doubtful, it would not be a personal obligation of a subsequent grantee; but such a servitude could only be enforced against the land. Whittenton Manf. Co. v. Staples, 164 Mass. 319.

The public acquired an easement in the highway which the owner of the land could not interrupt; and the title to the soil remained in the owner, and he has the right to every use to which the land can be applied subject to the easement of the public. He had the right to sink a water-course under the highway upon his own land for the use of his mill; but he must take care that the highway *remains* safe for travelers thereon. Perley v. Chandler, 6 Mass. 453; Woodring v. Forks Township, 28 Penn. St. 355; Hecock v. Sherman, 14 Wend. 59; Dygert v. Schenck, 23 Wend. 446; Washburn on Easements, star page 197; Briggs v. N. Y. C. & H. R. R. R. Co., 30 Hun, 295; Coatsworth v. Lehigh Valley R. R. Co., 156 N. Y. 457.

IV. Nuisance.— The recovery in this case can, as it seems to me, be upheld upon the ground that it was a nuisance for the defendant to maintain a stream across the highway without protecting the public, and that the obligation to protect the public rests primarily upon the defendant and secondarily upon the town, and that the latter in consequence of such liability has a right to abate the nui-

sance, that is to repair the bridge and charge the same to the owner of the premises.

Any act of an individual done to a highway although performed upon his own soil, if it detracts from the safety of travelers is a nuisance. Dygert v. Schenck, 23 Wend. 447, and cases there cited. A continuous act or omission which renders a public highway unsafe is probably a nuisance, *per se.* 16 Am. & Eng. Ency. Law, 937.

V. Right to abate a nuisance.— While it is true that the right to abate a public nuisance only lies with those who sustain a special injury, and in the case of a municipal corporation it can do nothing beyond the powers granted by the legislature. It is, however, made the duty of the commissioners of highways of towns to cause the highways and bridges therein to be kept in repair. Highway Law, § 4. And also is the duty of the overseer of highways to repair and keep in order the highways within his district. Highway Laws, § 26, subd. 1. And the town is made liable for defective highways. Highway Law, § 16. So that it became the duty of the commissioner of highways of the town of Clay, and also of the overseer of highways to abate the nuisance of an unsafe bridge by putting the same in a proper state of repair.

The fact that other remedies may exist does not preclude the public from bringing an action against the party liable to make the repairs. Woodring v. Forks Township, 28 Penn. St. 355. Where, in a given state of facts, the law raises a legal obligation to do a particular act, and there is a breach of that duty and a consequent damage assumpsit may be maintained upon a promise liable by law to do the act. 1 Chit. Pl. 155.

VI. Primary duty to repair.— I think that the primary liability to repair rested upon the defendant, the owner and occupier of the premises through which the water-course ran, and who received the benefits therefrom. As stated in the case of King v. Inhabitants, etc., 14 East, 317, by Grose, J.: " The defendants cannot be liable to repair a bridge erected and continued for the private benefit of the company; *for without the cut made by the company for their own benefit, there would be no necessity for the bridge.*"

It was stated by Mr. Justice Ruger in the case of City of Rochester v. Campbell, 123 N. Y. 411, " as being too well settled to require argument. * * * If a municipal corporation has been compelled to pay a demand for damages recovered by a traveler for injuries sustained from a defect or obstruction in one of its high-

ways, which defect or obstruction was created by the willful act or negligence of a third person, it may maintain an action against such third person for reimbursement, and the rule is the same when it has paid an undoubted liability without suit. * * * So, also, if the municipality has provided by contract with third persons for keeping its street in repair, and has been, through a neglect by such party to perform his contract, subjected to damages at the suit of an injured party, it may recover from such party the sum which it has thus been compelled to pay."

In this state, in this class of actions, the term " primary liability " has, as it seems to me, been frequently used carelessly. In the case of City of Rochester v. Montgomery, 72 N. Y. 67, Rapallo, J., uses the following language:

*" If the defendant unlawfully placed an obstruction in the street, or left it negligently without guards or lights, and McNeiss was injured in consequence, the plaintiff, although primarily liable to McNeiss, had recourse over against the defendant for the amount recovered by McNeiss, by reason of the defendant's unlawful or negligent act." This can only mean that McNeiss, the party injured, could first sue the city. For if the primary liability rested upon the city how could it maintain an action against one only secondarily liable?

In the case of City of Cohoes v. Morrison, 42 Hun, 216, affirmed in the Court of Appeals without opinion, 116 N. Y. 662, the court said, page 218, Landon, J.: " Sewell (the party who had recovered against the city) only sought recovery from the city, and it was *not needful* for him to establish that the defendant was the *primary author* of the act which injured him."

In the Campbell case, page 413, Mr. Justice Ruger uses the following language: " In these cases (actions by municipal corporations against wrongdoers for damages which they have been compelled to pay individuals injured through defects or obstructions in highways) *the primary liability rested upon those who created the dangerous condition* through which injury resulted and the municipality having been forced to pay such damages to one injured, it became subrogated to the remedies of the party whose damages had been satisfied."

It would seem clear, from the language of the court in the Morrison and Campbell cases, and upon principle, that the primary duty rests in this class of cases upon the individual who, either by a violation of a statutory or contractural duty by acts or omissions,

has caused the injury to the third person. In other words, the words " primary liability " mean not the person whom the third party can first sue; but the party ultimately liable, the party who must finally respond in damages for his wrongful or unlawful act.

For the foregoing reasons it seems to me that the acts of the defendant in continuing the water-course across the public highway without adequately protecting the public created a nuisance and that the statutory provisions in relation to the duties of the commissioner and overseer of highways of towns gave those officials the right and made it their duty in the performance of the affirmative obligation to the public to repair and abate such nuisance, and that the duty to maintain this water-course in such a manner that it should not become a nuisance rested primarily upon the defendant.

The evidence upon the subject of the value of the repairs is rather meagre. Eugene Delong, upon the subject, testified: " I made repairs upon the bridge after I served a notice on defendant. I had the old plank taken off and a new plank put on it. The bill for doing it amounted to $31.76. I presented the bill to Hart and asked him to pay it. Defendant said he wanted a few days to look it up."

As the defendant did not object to the amount of the bill when presented to him; did not object to the foregoing evidence upon the subject of the value of the repairs upon the trial, and did not claim upon the motion made for a nonsuit that the value of the repairs was not properly proven, did not raise objection upon this appeal the evidence will be deemed sufficient.

Judgment affirmed, with costs.