OPINION OF THE COURT
Wachtler, J.
On these three appeals, which are considered together because of their common factual and legal background, we are once again, concerned with controversies arising out of the granting by the respondent tax assessor *568 of exemptions from real property taxation to members of the Universal Life Church. In the main, all three appeals involve efforts by the State Board of Equalization and Assessment (SBEA) to prevent these exemptions. The central issue for our determination in whether the SBEA has authority to engage in that effort. The Appellate Division held it does not. We agree.
I
In April of 1977, the SBEA formally exhibited its concern with the proliferation of religious tax exemptions to members of the Universal Life Church by issuing a 28-page memorandum designed to “assist” local assessors in their determinations regarding exemptions. The succinct conclusion of this document, in addition to its statement that “it must be emphasized that the taxable status of each parcel * * * is dependent upon the facts developed for each parcel and the owner thereof”, is that “[n]o fact situation has been presented * * * which * * * would entitle real property owned by a ULC [Universal Life Church] member to either a total * * * or a partial exemption”. Nonetheless, the memorandum was ineffective to. stem the tide of exemptions, and, in response, the SBEA commenced the first entitled proceeding. The petition sought: a declaration that the 1977 tentative assessment roll is void; to enjoin certain named respondents from taking any action to establish the tentative assessment roll as the final assessment roll for 1977; and directing respondent Kerwick to restore to the taxable portion of the tentative assessment roll all real property granted exemptions in an arbitrary, capricious or unlawful manner.
The statutory authority upon which SBEA relied for initiation of this proceeding is found in section 202 of the Real Property Tax Law, which in pertinent part states:
“Powers and duties of state board
“1. The board shall: * * *
“(g) Furnish assessors with such information and instructions as may be necessary or proper to aid them in making assessments, which instructions shall be followed and compliance with which may be enforced by the board”.
SBEA vigorously contends that this is a self-executing *569 mandate to compel adherence to SBEA instructions through immediate judicial proceedings, without there being any necessity to comply with the preliminaries for such review as set forth in subdivision 2 of section 216 of the Real Property Tax Law. That statute, however, appears to contemplate otherwise in its statement that: “[Wjhenever it appears to the satisfaction of the board that any assessor or other public officer or employee whose duties relate to assessments has failed to comply with the provisions of this chapter or any other law relating to such duties, or the rules and regulations of the board made pursuant thereto, after a hearing on the facts, the board may issue its order directing such assessor, officer or employee to comply with such law, rule or regulation, and if such assessor, officer or employee shall neglect or refuse to comply therewith within the period of ten days after service on him of such order, the board may apply to a justice of the supreme court for a summary order to compel him to comply with such law* rule or regulation, and the justice shall have power to issue such order” (Real Property Tax Law, § 216, subd 2; emphasis added).
We are not convinced by the argument of SBEA that section 202 authorizes prompt judicial review without these procedural safeguards, merely because prompt judicial attention in some instances might serve to dispose of the matter prior to the finalization of the assessment roll. Of course, expediting the contemplated proceedings would serve a salutory purpose, but it is for the Legislature to make this summary method available. This the Legislature has not done, and, without such a stated limitation, section 202 would provide a serious loophole for wholesale avoidance of the obvious concerns reflected in section 216. We reject, therefore, SBEA’s broad interpretation of section 202 and hold, in agreement with the Appellate Division, that in view of SBEA’s conceded failure to comply with section 216, the petition was properly dismissed.
II
After the decision at Special Term in the proceeding discussed above, SBEA began procedures designed to com *570 ply with section 216. Subpoenas were issued, and eventually the respondent assessors from the Towns of Hardenburgh, Liberty, Rochester, and New Paltz, appeared before the SBEA for a hearing. After having heard the testimony, the hearing officer concluded that exemptions to Universal Life Church members had been improperly granted, and found that the affected real property should be restored to the nonexempt portion of the assessment rolls. The SBEA agreed and issued orders directing each town assessor to petition the town board of assessment review to remove the affected properties from the exempt portions of the roll. When the assessors failed to comply within 10 days (see Real Property Tax Law, § 216, subd 2), SBEA instituted a CPLR article 78 proceeding to enforce compliance. The petition was granted to the extent of ordering that the parcels be placed on the assessment rolls as omitted properties (see Real Property Tax Law, § 551).
During the pendency of the proceeding, the assessors commenced an article 78 proceeding of their own, seeking to challenge the SBEA hearing and orders on various grounds. SBEA moved to dismiss this proceeding and the motion was granted.*
The respondent assessors appeal both of the above orders to the Appellate Division, which considered the matters together. The Appellate Division reversed both orders due to irregularities which it found in the hearing process, and because the court concluded that the respective directives of the SBEA to the assessors were beyond that agency’s jurisdiction.
It is clear that from the outset of the administrative procedures, the SBEA objective was to influence substantive determinations of the assessors regarding exemptions. At the threshold, then, is to determine whether the SBEA had the power to involve itself in this process. Because we agree with the Appellate Division that SBEA did not have this power, we do not reach issues concerning alleged defects in the administrative hearing process. Because the issue *571 concerning the jurisdiction and power of the SBEA also is raised in the third entitled appeal, we defer our discussion to that portion of this opinion.
Ill
The third proceeding was commenced by the SBEA and the State which is suing in its capacity as an affected local landowner. This third attempt by SBEA to obtain compliance with its view as to the Universal Life Church exemptions was initiated in response to the respondent assessors’ action subsequent to the previously discussed orders of Special Term (see heading II, supra). In what SBEA characterizes as an attempt to circumvent those orders, the assessors held grievance procedures for those taxpayers who were threatened with the loss of their exemptions. These procedures culminated in uniform determinations by the assessors that the properties should remain exempt. Thus, although the properties were temporarily rendered nonexempt, they were ultimately placed on the exempt portion of the 1978 assessment rolls. At Special Term, the court concluded that this had been done with arbitrary and capricious disregard for the law. However, the Appellate Division reversed, and while other issues were considered, it concluded that due to limitations on the powers of the SBEA the agency had no authority to enforce compliance with its views regarding the exemptions. Accordingly the petition was dismissed.
The Appellate Division also dismissed the suit brought by the State as a landowner based in part on its conclusion that the State was relegated to the exclusive remedy of an article 7 proceeding (see Real Property Tax Law, art 7). While we disagree with this argument that article 7 was the State’s exclusive remedy (see Matter of Dudley v Kerwick, 52 NY2d 542, [decided herewith]), we conclude nonetheless that reversal of the order of Special Term was appropriate for the additional reason relied on by the Appellate Division, that Special Term erroneously converted a motion to dismiss into one for summary judgment, without proper notice to the parties of its intent to do so (see CPLR 3211, subd [c]).
*572 On the issue of the jurisdiction of the SBEA to initiate the proceeding under review, though we agree with the court below, the significance of this holding requires that we engage in some discussion of that agency’s history and purpose.
In the history of our State there have been other bodies known as the Board of Equalization and Assessment (Kilmer, Introduction to the Real Property Tax Law [1960]), but the present SBEA began its existence in the form of a temporary commission created in 1949 (L 1949, ch 346). The impetus for its creation was a legislative concern that the then existing equalization rates had gradually been rendered inaccurate by increases in property values during economic inflation during the aftermath of World War II (Kilmer, Introduction to the Real Property Tax Law; see, also, L 1949, ch 346, § 1 [legislative determinations]; Matter of Town of Smithtown v Moore, 11 NY2d 238, 241; Guth Realty v Gingold, 34 NY2d 440, 448). The temporary commission, known as the State Board of Equalization and Assessment, faced the immediate task of revising the old State equalization rates, and offering recommendations on the continuation of this essential function in the future (L 1949, ch 346, §§ 3, 12). It is significant, we think, that the broad devolution of powers and duties on the new commission, though not purporting to be exclusive, contained no authorization for substantive input, much less control, by the SBEA in the individualized local assessment process (L 1949, ch 346, § 3).
The temporary commission was continued under express statutory enactment until April 1, 1960 when the board was reconstituted as a permanent State agency (L 1960, ch 335; Real Property Tax Law, §§ 200-216; see Matter of Town of Smithtown v Moore, swpra). However, it is clear that at this time the essential function of the agency was not to change; it remained authorized to advise on assessment matters, keep current equalization rates, and perform certain other functions with which we are not now concerned (see Governor’s Memorandum, NY Legis Ann, 1960, p 482; also reprinted at McKinney’s Session Laws of NY, 1960, p 2007).
The current wording of section 202 of the Real Property *573 Tax Law, which concerns the power of the SBEA, is apparently to the same effect as the legislative history. The SBEA is possessed of “general supervision of the function of assessing”, and may “[f]urnish assessors with such information and instructions as may be necessary or proper to aid them in making assessments, which instructions shall be followed and compliance with which may be enforced by the board” (Real Property Tax Law, § 202, subd 1, pars [e], [g]; emphasis added). Thus the statute grants authority “to aid” in the assessments; conspicuously absent is an authorization to direct substantive assessment decisions. Were we to adopt SBEA’s broad interpretation of its powers, that they may enforce their conclusion on any assessor that a specific exemption or group of exemptions are erroneous under the law, and therefore illegal (cf. Real Property Tax Law, § 216, subd 2), there would be no logical end to the process. In a sense, every erroneous assessment involves some illegality (City of Mount Vernon v State Bd. of Equalization & Assessment, 44 NY2d 960, 962), but the illegality which the SBEA is empowered to prevent is only that falling in the ambit of its procedural functions.
Practical problems also ensue if we establish the jurisdiction and authority which the SBEA seeks. It is conceded by the SBEA that the assessor’s determination with regard to exemptions is an individualized process, and yet it argues that it seeks to hold the assessors accountable for broad patterns of exemptions. It is difficult to see how this board instruction against Universal Life Church exemptions could be translated into concrete enforcement. It is in this very proceeding that the assessors allegedly circumvented the broad instruction by a multitude of “individual” redeterminations on grievance day. Although this too is characterized by the SBEA as an illegal action, it would seem wrong to suggest that the exemptions would still be voidable by a single blow administered by the SBEA. Certainly, to allow such a binding determination without providing an opportunity for each affected landowner to be heard would violate due process (see Matter of Dudley v Kerwick, 52 NY2d 542, supra [decided herewith]).
All of this makes apparent the fact that the SBEA is seeking to go beyond its intended scope of procedural regu *574 lation. In determining the authority claimed by the SBEA was legislatively intended we must also consider the active participation by that agency in this complex and expensive litigation. SBEA can point to no specific legislative authorization to undertake it. We cannot, therefore, reasonably conclude that this activity was intended to be within the SBEA’s authority for “general supervision of the function of assessing” (Real Property Tax Law, § 202, subd 1, par [e]).
Finally we note that nothing we have said should reflect adversely on the propriety of the preparation and distribution of the instructional memorandum dealing with religious property exemptions. The availability of such information is undoubtedly valuable in this problematical area. The enforcement of the views it contains, however, is an entirely different matter.
Accordingly, the orders of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur; Chief Judge Cooke taking no part.
In each case: Order affirmed, with costs.

 The constitutional arguments which petitioners made in this proceeding were dismissed on the merits as unsupported on the record. Other arguments were deemed precluded by the determination in the related SBEA instituted proceeding.