OPINION OF THE COURT
Daniel F. Luciano, J.
This is an application by Henry J. Murer, the Superintendent of Highways of the Town of Huntington (hereinafter sometimes referred to as the Superintendent), “for an order for an injunction preventing the Supervisor and the Town Board of the Town of Huntington from imposing an unauthorized tax upon the people of the Town of Huntington, or some of them, and directing the Supervisor and the Town Board to make such changes in the Town budget as will restore the improper taxes to the taxpayers of the Town of Huntington, and remove them from the Highway budget and place them in the appropriate place in the budget of the Town of Huntington”.
*970 The facts giving rise to the current dispute are as follows:
In 1982 the Town Board of the Town of Huntington undertook to improve certain sidewalks and highways in the Town of Huntington. To finance the work the Town Board issued serial bonds (see Local Finance Law, § 21.00) and capital notes[1] (see Local Finance Law, § 28.00). The bondholders, by resolution of the Town Board[2] and by the terms of the bonds, were to be repaid from funds raised by so-called “whole-town” taxes — taxes levied upon property throughout the entire Town of Huntington including property located within the four incorporated villages within the town.
After receiving advice from the New York State Comptroller’s office, in adopting its budget for the year 1983, the Town Board removed the bond indebtedness as a whole-town charge and budgeted the bond indebtedness into the highway budget of the Department of Highways of the Town of Huntington. In the words of the Superintendent, “[t]he effect of this transfer * * * in the budget is that the. debt which was to be paid by all of the taxpayers of the Town of Huntington including those living in the Villages of Lloyd Harbor, Huntington Bay, Northport and Asharoken, will now be paid only by those taxpayers who do not live in those Villages” (i.e., the effect was to create a “part-town” tax).
This transfer effectively disregards the provisions of subdivision a of section 33.00 of the Local Finance Law (bond resolution and capital note resolution; procedure for enactment thereof), section 2.00 (subd 4, par [c]) (Town Board is “finance board”) and the procedurally lawful bond resolutions underlying the issuance of the bonds.
The Town Board and Town Supervisor do not dispute these contentions.
*971 Rather, the Town Board and Town Supervisor have cross-moved “pursuant to CPLR 404, 2215 and 3211 for an order dismissing the plaintiff’s cause of action on the grounds that the petitioner has neither the legal standing nor the legal capacity to sue, the court should not proceed in the absence of a person who should be a party and the proceeding was brought in an improper form”.
The issue regarding the standing and legal capacity of the Superintendent to maintain this proceeding shall be considered first.
In support of their contention that this matter should be dismissed on the grounds of lack of standing and legal capacity the Town Board and Town Supervisor note that Henry J. Murer commenced this proceeding in his capacity as Superintendent of Highways of the Town of Huntington and not as an individual taxpayer or bondholder. It is asserted that when the obligation on the bonds was converted from a whole-town to a part-town charge “the Town Board provided for additional revenue in the form of real property taxes to cover this expense”. Therefore, it is concluded, “the Town Board in no way diminished or reduced the operating funds of the highway department” and the Town Board’s action “had absolutely no affect [sic] on the functioning of the highway department or on the Superintendent’s ability to properly exercise his responsibilities.” Accordingly, dismissal of this proceeding is urged since “[t]he Highway Department and the Superintendent of Highways, having suffered no legal injury by the Town Board action, has in his official capacity no legal standing to challenge the action.”
Moreover, it is noted that the Town Board has authorized the Superintendent neither to commence this proceeding nor to employ counsel to do so. Thus, it is claimed that this proceeding cannot be maintained by Mr. Murer in his official capacity. In support of this argument reference is made to subdivision 1 of section 65 of the Town Law which provides: “Any action or special proceeding for or against a town, or for its benefit, and upon a contract lawfully made with it, or with any of its officers or agents authorized to contract in its behalf, or to enforce any liability created, or duly enjoined upon it, or upon any of its officers or agents *972 for which it is liable, or to recover damages for any injury to any property or rights for which it is liable, shall be in the name of the town. The town board of any town may authorize and direct any town officer or officers to institute, defend or appear, in any action or legal proceeding, in the name of the town, as in its judgment may be necessary, for the benefit or protection of the town, in any of its rights or property. It shall be the duty of any officer or officers so authorized and directed to institute said action or legal proceeding or to defend or appear therein, and the reasonable and necessary expense of such action or proceeding, or defense or appearance shall be a town charge. No such officer or officers, however, shall employ legal counsel except as directed by the town board.” (Emphasis added.)
Absent any such authorization and direction as provided in this section, claim the Town Board and Town Supervisor, Henry J. Murer lacks the legal capacity to maintain this proceeding in his official capacity.
The Superintendent asserts that there is statutory authority to support his maintenance of this proceeding. He cites section 140 of the Highway Law, which sets forth the general powers and duties of the Town Superintendent of Highways and which provides, in part:
“The town superintendent shall, subject to the rules and regulations of the department of transportation, made and adopted as provided in this chapter * * *
“13. Bring an action in the name of the town, against any person or corporation, to sustain the rights of the public, in and to any town highway in the town, and to enforce the performance of any duty enjoined upon any person or corporation in relation thereto, and to recover any damages sustained or suffered, or expenses incurred by such town, in consequence of any act or omission of any such person or corporation, in violation of any law or contract in relation to such highway.”
In reviewing these statutory provisions the court concludes that subdivision 1 of section 65 of the Town Law is not the exclusive source of a town officer’s authority to maintain a legal proceeding. There is other authority. For example, in Cahn v Town of Huntington (29 NY2d 451), where there had been litigation between the Planning *973 Board of the Town of Huntington and the Town Board, the Court of Appeals ruled that even absent statutory authority permitting the Planning Board to retain counsel for the litigation there was implied authority and, thus, the town was liable for the Planning Board’s attorney’s fee. In discussing subdivision 1 of section 65 of the Town Law the court said: “The thrust of this section is to place the burden of the prosecution of actions by a town or its officers against a third party and the defense of actions brought against the town or its officers by a third party upon the judgment and direction of the Town Board * * * The statute certainly does not apply to litigation between two town officers or boards concerning the proper performance of their duties. If it did, a situation would be created in which the Town Board could prevent the board it sued from engaging counsel. We should not, of course, ascribe to the Legislature an intent to have such a result ensue.” (29 NY2d, at p 456.)
Therefore, since the proceeding at bar is litigation between one town officer on the one hand and another town officer and the Town Board on the other hand regarding the proper performance of the duties of the latter two, subdivision 1 of section 75 of the Town Law is not a bar to the petitioner’s right to maintain this proceeding.
Moreover, in Cahn v Town of Huntington (supra, at p 455), the Court of Appeals indicated that, “[notwithstanding lack of specific statutory authority, a municipal board or officer possesses implied authority to employ counsel in the good faith prosecution or defense of an action undertaken in the public interest, and in conjunction with its or his official duties where the municipal attorney refused to act, or was incapable of, or was disqualified from, acting.” Of course a town officer’s authority is not always implied authority. Certainly a town officer may proceed when there exists specific statutory authority underpinning his actions. (Bowman v Squillace, 74 AD2d 887 [town building inspector’s right to bring an article 78 proceeding rested upon Town Law, § 267, subd 7 and, accordingly, § 65, subd 1 was not applied]; 8 Opns State Comp, 1952, p 314 [“A town superintendent of highways may institute an action in the name of the town pursuant to section 140(13) of the *974 Highway Law without the prior approval of the town board”].)
Thus, the next inquiry to be made here is whether there is any express statutory authority for this proceeding.
As noted above the Superintendent has cited subdivision 13 of section 140 of the Highway Law as express authority for maintaining this proceeding. The court cannot agree.
In conjunction with this argument the Superintendent has cited section 283 of the Highway Law which relates to custody of highway moneys and provides: “All moneys levied and collected as provided in this article, all moneys collected as penalties under this chapter, or received from any other source and available for highway, bridge and miscellaneous purposes and all moneys paid to the town by the state, as provided in sections two hundred seventy-nine, two hundred and eighty and two hundred eighty-two and as provided in chapter eight hundred twenty-four of the laws of nineteen hundred fifty, [former sections 219 to 229-c of Highway Law, which were repealed by L 1960, ch 315, § 1, eff Mar. 29, 1960 (see McKinney’s Cons Laws of NY, Book 24, Highway Law, page 214, n 1)] as amended from time to time, shall be paid to the supervisor, who as such shall be the custodian thereof, and accountable therefor.” (Emphasis added.)
Based upon the contention that the Town Supervisor has breached his obligation under section 283 of the Highway Law by a misappropriation of funds, it is asserted that the Town Superintendent of Highways has standing to challenge the actions of the Town Supervisor “to sustain the rights of the public * * * to enforce the performance of [a] duty enjoined upon” the Town Supervisor and Town Board in relation to a town highway in the town. (See Highway Law, § 140, subd 13.)
The court, however, does not view subdivision 13 of section 140 of the Highway Law as the Superintendent’s authority for maintaining this proceeding. It is conceptually difficult to conclude that the Superintendent’s sole source of authority for maintaining a legal proceeding is the express authority set forth in this section by which the Superintendent is empowered to bring an action in the name of the town. Taking into account the Court of Ap *975 peals recognition that there may be litigation between town officers and town boards concerning the proper performance of their duties (Cahn v Town of Huntington, 29 NY2d 451, supra), it must be noted that the Town Board “exercises both legislative and administrative powers, and it cannot and does not exist separately and independently from the town of which it is the governing body.” (Berean v Town of Lloyd, 3 AD2d 585, 587.) To require the Superintendent to bring this proceeding in the name of the town is, then, virtually to require the town to bring an action against itself. More likely, the thrust of subdivision 13 of section 140 of the Highway Law is, where the matters specified therein are concerned, to empower the Superintendent of Highways to prosecute actions or even to place upon the Superintendent of Highways the burden of the prosecution of such actions by the town against a third party. (Cf. Cahn v Town of Huntington, supra, at p 456, construing Town Law, § 65, subd 1.)
In any event, even assuming that this proceeding is otherwise one which would fall within the contemplation of subdivision 13 of section 140 of the Highway Law, this is not an action which is brought in the name of the town as specified in subdivision 13 of section 140. (See Town of Palatine v Canajoharie Water Supply Co., 90 App Div 548, affd 184 NY 582; see, generally, Town of Clay v Hart, 25 Misc 110, affd 41 App Div 625.) Therefore, this is not a proceeding undertaken pursuant to the authority of subdivision 13 of section 140 of the Highway Law.
The court concludes, however, that the alternative to express statutory authority, implied authority, does exist and, consequently, the Superintendent of Highways has the legal capacity and standing to bring a proceeding to challenge the acts of other town officers and boards.
Generally, implied authority must exist in the office of Town Superintendent of Highways where necessary to enable that officer to effect the purposes of the office and to allow him to properly function. (See Cahn v Town of Huntington, supra, at p 455.) More specifically, section 284 of the Highway Law is a source of the Superintendent’s capacity and standing to maintain a proceeding for relief such as that requested. This section provides, in part: “The *976 moneys levied and collected for the repair and improvement of highways, including sluices, culverts and bridges having a span of less than five feet and boardwalks or renewals thereof, the moneys received from the state, as provided by sections two hundred seventy-nine and two hundred eighty-two, and such other moneys as the town board, by resolution, shall have transferred pursuant to section one hundred thirteen of the town law or pursuant to section two hundred eighty-five-a of this chapter shall be expended for the repair and improvement of such highways, sluices, culverts, and bridges and walks, at such places and in such manner as may be agreed upon by the town board and the town superintendent of highways, and subject to the approval of the county superintendent of highways. Such agreement shall be written and signed in duplicate by a majority of the members of the town board, and by the town superintendent, and shall be approved by the county superintendent of highways, before the same shall take effect. One of such duplicates shall be filed in the office of the town clerk and one in the office of the county superintendent. Such moneys shall be paid out by the supervisor on vouchers approved by the town superintendent in accordance with such written agreement.” (Emphasis added.)
Thus, the Superintendent of Highways is a party to a written agreement with respect to the expenditure of funds, as directed by section 284 of the Highway Law. The Superintendent has supplied the court with a copy of the agreement which was executed on December 23, 1982 and approved by the County Superintendent of Highways. The agreement makes no reference to the source of the funds to be expended. Nevertheless, if the funds which are to be expended pursuant to the agreement have been illegally raised, as a party to the agreement the Superintendent of Highways must have standing to object.
As noted in Myruski v Town Board (87 Misc 2d 1063) this agreement is a constraint upon the Superintendent’s right to direct the expenditure of the moneys levied and collected for the repair and improvement of highways. Certain improper actions by the Superintendent may result in his personal liability or his removal from office. Thus, there is *977 a direct interest which the Superintendent of Highways may seek to protect and to do so there must be implied authority for the Superintendent to bring an action. It would be illogical to leave a Town Superintendent of Highways without a means of challenging what is, in effect, an implied, illegal provision of the agreement to which he is a party and thus, in the position of being required to knowingly spend money unlawfully obtained.
Accordingly, the court concludes that the implied authority of the petitioner to maintain this proceeding is manifest, and the proceeding shall not be dismissed on the ground that the petitioner has no legal capacity to maintain this proceeding.
The two remaining objections to the maintenance of this proceeding, that it is in an improper form and that the court should not proceed in the absence of necessary parties, must be considered together.
Independently considered, even assuming the merit of these contentions, neither of these grounds would warrant dismissal.
CPLR 103 (subd [c]) provides: “If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.” (See, e.g., Matter of Mandis v Gorski, 24 AD2d 181.)
Further, although dismissal of this proceeding is sought upon the ground that the court should not proceed in the absence of a person who should be a party (see CPLR 3211, subd [a], par 10), dismissal is not the appropriate remedy if the nonjoined persons are subject to the court's jurisdiction. The remedy is merely to direct joinder of those parties. (CPLR 1001, subd [b]; Siegel, NY Prac, §§ 138, 133.)
A different conclusion is warranted, however, when the two defects are considered together. To illustrate, in National Merritt v Weist (50 AD2d 817, affd 41 NY2d 438, 444, n 2) the court observed that “[a] legislative act * * * may not be declared invalid in an article 78 proceeding — the proper vehicle being a declaratory judgment action”. In a situation where a proceeding was in the wrong form to *978 challenge a legislative enactment and a necessary, but available, party had not been joined the Court of Appeals in Overhill Bldg. Co. v Delany (28 NY2d 449, 458) said, “article 78 proceedings continue to be inappropriate vehicles to test the constitutionality of legislative enactments and respondent’s remedy is an action for a declaratory judgment. Although it is true that CPLR 103 (subd. [c]) gives the courts the power to treat an article 78 proceeding as an action for a declaratory judgment, this power is conditioned on jurisdiction over the parties. Since, in actions for judgment declaring unconstitutional a legislative act of the village, the village trustees would be necessary parties, CPLR 103 (subd. [c]) is not available to respondent because only the Village Board of Appeals, Building Inspector and Village Engineer are parties to this proceeding. However, pursuant to CPLR 1003, Special Term should have dismissed this part of the petition without prejudice.”
Before application of these rules a brief review of the budget and tax levying process is in order.
Sections 102 through 115 of the Town Law constitute the “budget system”. (Town Law, § 102.) The sections establish the process for developing a budget from the initial submission of estimates, preparation of a tentative budget, establishment of a preliminary budget, public hearings and adoption of an annual budget. After all these steps have been taken the provisions of section 115 apply. Section 115 provides, in part: “The town clerk shall prepare and certify in duplicate a copy of the annual budget as adopted by the town board, together with the estimates, if any, adopted pursuant to section two hundred two-a, and within five days thereof deliver two copies of such budget to the supervisor of the town. The supervisor shall present the copies of the annual budget to the board of supervisors of the county in which such town is situated within ten days after his receipt thereof from the clerk as hereinabove provided. The board of supervisors shall levy and cause to be raised the amounts specified in said annual budget to be levied by tax or assessments, and such amounts shall be levied, assessed and raised by tax and assessments upon the real property of the town liable therefor, at the time *979 and in the manner provided by law for the levy of state and county taxes.”[3]
Thus, it is the County Legislature which authorizes the taxing of town residents.
The binding nature of the County Legislature’s act is illustrated by the situation discussed in opinion No. 81-170 of the State Comptroller (1981 Opns State Comp, p 180). There, a specified amount was fixed in the annual town budget for a certain fire district. After adoption of the budget copies were submitted to the county governing board in accordance with section 115 of the Town Law to have the county governing board “ levy and cause to be raised the amounts specified in said annual budget to be levied by tax or assessments.’ ”
Due to a clerical error, however, the county inadvertently levied an amount which was $8,000 less than the amount provided in the budget of one fire district. In response to an inquiry as to what might be done to rectify the error the State Comptroller analogized to another situation where it had been concluded “that there was no legal principle upon which the town could recover the shortage from the county, and that the town must either cut its appropriations or possibly borrow through the issuance of budget notes.”
Although the facts in that situation differed from those in the present circumstance the principle that the town cannot undo the county’s levying of taxes is the same.
To challenge the taxing scheme now in effect, therefore, is to challenge the validity of an act of the Suffolk County Legislature and the County of Suffolk must be made a party. (Cf. Overhill Bldg. Co. v Delany, supra.)
Returning now to the form of the matter before the court, it appears that this proceeding was brought to the court after commencement by means of the service of a “notice of motion” and accompanying “petition”. These initiating papers style the parties as “petitioner” and “respondent”. *980 The notice of motion and petition are all that have been served in the way of initial pleadings.
As noted above, the relief requested is an injunction. The respondents have referred to the application as a motion for a permanent injunction, but they take note of the form of the petitioner’s application. In paragraph 10 of his affidavit submitted in answer to the cross motion the petitioner states “that this is a Motion for Summary Judgment”. But, paragraph 13 of the same affidavit states: “While the Defendant sees this as an action for an injunction, Petitioner sees it more as an Article 78 proceeding in the nature of mandamus directing the Town Board to correct its actions and properly assess taxes within the Town.”
While it is obvious that this matter has not followed any clearly defined procedural path it is clear that this matter has not proceeded as a plenary action commenced with a summons and complaint and a motion for summary judgment following joinder of issue.
In what form this application for relief should be is the issue to be resolved.
Stated in simple terms, “[mjandamus or a proceeding in the nature of mandamus is purely a statutory remedy whose function is to compel the doing of an act by a public officer or body where the act is required by law to be performed.” (23 Carmody-Wait 2d, NY Prac, § 145:79.)
There are certain elements in the papers seeking relief which suggest that mandamus is the appropriate remedy, since the essence of the Superintendent’s argument is that the Town Board and Town Supervisor have illegally imposed a tax on certain residents of the Town of Huntington and the relief sought is to have the Town Board and Town Supervisor restrained from further enforcement of the purportedly unlawful taxing provision. (See 23 CarmodyWait 2d, NY Prac, §§ 145:108, 145:80.)
The relief sought, however, cannot be obtained in so simple a form. Far more than a direction to certain government officials to perform a statutorily mandated, ministerial task is involved. Aside from necessarily including a challenge to an act of the Suffolk County Legislature, *981 this application concerns the conflicting rights and obligations of many persons or classes of persons not involved as parties in the current dispute.
First, since it appears that there has been procedural compliance with the budget system (discussed supra) the requested relief cannot be granted based upon mere noncompliance therewith. Further, because the taxes repaying the bondholders have their only colorable validity as a result of the act of the County Legislature, there is no status quo to be restored. Any adjudication in this proceeding must turn upon the substantive rights of the bondholders with respect to the diminished tax base underlying the obligation to repay, and the respective substantive rights of the village taxpayers and nonvillage taxpayers whose obligation to pay the taxes in question is at issue, as well as the validity of an act of the Suffolk County Legislature.
As noted above, an article 78 proceeding is not the proper vehicle for seeking a declaration that a legislative act is invalid. (E.g., National Merritt v Weist, 50 AD2d 817, affd 41 NY2d 438, supra.) Moreover, “mandamus cannot lie against an officer, public body or corporation until the claimant’s primary right and the respondent’s duty can be said to have already been fixed as a matter of law.” (State Div. of Human Rights v New York State Dept. of Correctional Servs., 90 AD2d 51, 65.)
Here, the Superintendent of Highways’ right to the requested relief has not yet been fixed as a matter of law; the right to such relief cannot be fixed absent joinder of additional parties.
CPLR 1001 (subd [a]) provides, in part: “Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants.”
The two reasons for the compulsory joinder of parties are set forth in Weinstein-Korn-Miller, New York Civil Practice (vol 2, par 1001.01): “first, to prevent a multiplicity of suits by securing a complete resolution of the controversy and, second, to protect absentees who ought not be jeopardized or ‘embarrassed by judgments purporting to bind *982 their rights or interests where they have had no opportunity to be heard.’ ” (Quoting, First Nat. Bank v Shuler, 153 NY 163, 170.)
Stated another way in Carmody-Wait 2d, New York Practice (vol 3, § 19:55): “Necessary parties are those whose rights must be ascertained and settled before the rights of the parties can be settled.” (Citing Chapman v Forbes, 123 NY 532; Matter of Stafford, 103 NYS2d 153.)
Here, to determine that taxes should be imposed upon village residents would certainly be a judgment purporting to bind the rights of those village residents. In the alternative, a finding that the Town Board and Town Supervisor have acted properly would be a judgment purporting to bind the nonvillage taxpayers and the bondholders. Or, in other words, the rights of the village taxpayers, nonvillage taxpayers and the bondholders must be ascertained and settled before there can be a resolution of the dispute between the parties.
The role of the bondholders as parties herein is self-evident. Their right to object to what is, allegedly, a unilateral change in the terms affecting the obligation to repay the money which they have loaned to the Town of Huntington is a clear one.
The village residents’ right to be heard must also be respected. For example, in Matter of Dudley v Kerwick (52 NY2d 542), where an article 78 proceeding was commenced by taxpayers complaining of the tax exemptions afforded to other property owners, the Court of Appeals determined that those other property owners were necessary parties because the relief sought by the petitioners was revocation of their privileges. In the present case, although the attack upon the exemption afforded to the village residents is a bit less direct than that which existed in Dudley v Kerwick (supra), the parties’ relative positions are similar. Just as the obligation of the exempted property owners to pay taxes was put in issue in Dudley v Kerwick (supra), the Superintendent in this proceeding has put in issue the obligation of the village residents to pay the taxes which will supply the funds to repay the obligation on the bonds. Thus, in this proceeding, just as that which was considered by the Court of Appeals, those potentially, adversely affected taxpayers should be joined as parties.
*983 Parallel reasoning applies to the town residents outside the incorporated villages.[4] A finding that village residents are exempted from the tax in question would adversely affect the remaining town taxpayers who would then be required to carry the burden of satisfying the obligation to the bondholders. It may be noted that in Dudley v Kerwick (supra), the Court of Appeals did not explicitly state that all the taxpayers in a position similar to the petitioners were necessary parties. However, in light of the fact that the petitioners had already undertaken to proceed on behalf of all others similarly situated the question was not squarely before the court. It may be observed that on remand to the Appellate Division (84 AD2d 884) the petitioners’ class was certified so that all those similarly situated were made parties.
The instant proceeding presents a stronger case than Dudley v Kerwick (supra), for requiring the nonvillage taxpayers to be joined as parties since Henry J. Murer is not himself proceeding as a member of that class. This distinction is of vital significance. Since this proceeding undoubtedly will affect such nonvillage taxpayers their interest should be represented directly.
This is not a case in which the principle that the granting of relief to the Superintendent will adequately serve the nonvillage taxpayers who would be entitled to comparable relief under the principles of stare decisis. (See, e.g., Matter of Rivera v Trimarco, 36 NY2d 747; Baumes v Lavine, 38 NY2d 296, 305.) Involved here are two groups of taxpayers with conflicting interests. In essence, a victory for one group is a defeat for the other. Since this conflict must be resolved before any individual would be able to benefit from the principle of stare decisis it is necessary that all interested parties be represented in one proceeding.
Under the circumstances, this proceeding must be dismissed without prejudice to renewal in the form of a plenary action for declaratory and injunctive relief and after joinder as additional parties: the County of Suffolk, *984 the bondholders, the village taxpayers, and the town taxpayers outside the four incorporated villages.
Further, in any future proceedings regarding this matter the parties would be well advised to address themselves to the applications and implications of the securities laws.

. The papers submitted discuss only the bonds. The court therefore has, herein, discussed bondholders only. If, however, there are noteholders in similar, parallel positions to bondholders this discussion should be deemed to apply to them as well.

. The two subject bonding resolutions provide in their respective sections “4”, inter alia, “[tjhere shall annually be levied on all the taxable real property of said Town, a tax sufficient to pay the principal of and interest on such obligations as the same become due and payable.”

. Subdivision 2 of section 150-a of the County Law provides that “[w]henever the board of supervisors of a county is referred to or designated in any law ** * * pertaining to any of the functions, powers, obligations and duties of such board, such reference or designation shall be deemed to include the elected county legislative body * * * which * * * shall have been established in place of the hoard of supervisors.”

. It cannot be concluded that the nonvillage taxpayers are adequately represented by their Town Board and Town Supervisor in the dispute since their position in this matter is, effectively, adverse to those taxpayers.