OPINION OF THE COURT
Peter B. Skelos, J.
Petitioner, Word of Life Ministries, initially commenced separate CPLR article 78 proceedings against two taxing authori *111 ties, County of Nassau and the Village of Freeport. These proceedings were consolidated on March 20, 2001, as they involve common questions of law and fact.
Petitioner moves for judgments pursuant to CPLR 7801 annulling and setting aside the determinations of the respondents, which denied petitioner’s applications for real estate tax exemptions under RPTL 462 or 420-a. Petitioner further requests costs and attorneys’ fees. Respondent, County of Nassau and Nassau County Department of Assessment (hereinafter County), argues that the properties at issue are not eligible for exemption under either statute because they are not used exclusively as residences of “officiating clergy” as the County defines that term. Respondent, Incorporated Village of Freeport (hereinafter Village), has also denied petitioner’s request for tax exemption of these properties on the same grounds. The matter is resolved as set forth below.
On a procedural note, the Village asserts that petitioner has improperly styled this action as an article 78 proceeding. The Village contends that petitioner’s challenge is to individual assessments of individual properties, and not to the method of calculation or tax formula itself. As such, the Village claims that petitioner should have commenced a special proceeding under article 7 of the RPTL. Petitioner rejects this analysis and argues that it is not challenging individual assessments as excessive. In fact, it does not object to the assessed value of the properties or claim an overvaluation. Rather, petitioner objects to the method employed by the Village in defining “officiating clergy” and alleges that the Village assessor has arrogated legislative power and made a wholesale change to exemption policy based on the definition of “officiating clergy,” thus exposing the taxing authority to article 78 review.
It is well established that a taxpayer may “mount a collateral attack on the taxing authority’s action if the challenge is to the method employed in the assessment involving several properties rather than the overvaluation or undervaluation of specific properties” (Matter of Krugman v Board of Assessors, 141 AD2d 175, 180; see also, Matter of Board of Mgrs. of Greens of N. Hills Condominium v Board of Assessors, 202 AD2d 417, 419). It is clear that petitioner is not contesting the valuation of the properties in question but rather the method employed in assessing them. Further, petitioner’s argument is not based on “[m]ere allegations, unsupported by evidentiary matter,” relegating them to the relief provided in RPTL article 7 (see, Krugman, at 180). As such, the court finds that this special *112 proceeding was properly commenced pursuant to article 78 (see, Matter of Dudley v Kerwick, 52 NY2d 542, 551).
On or about September 24, 1999, petitioner filed applications for tax exemption with the County for seven parcels of land pursuant to RPTL 462 or 420-a. The required application for a tax exemption is a standard form issued by the New York State Board of Real Property. The application requests the name of the officiating clergy below a single line. The questions regarding “the officiating clergy” are worded in the singular, e.g., “Has the officiating clergy of this religious corporation had formal training as a clergy?” (Emphasis added.) However, the applicable statute allows for the possibility that there may be more than one officiating clergy within a church (see, RPTL 462 [“while actually used by the officiating clergymen thereof for residential purposes”] [emphasis added]). This court interprets the applications to request the name of the clergyman at each single parcel of land.
The application further requests information pertaining to the officiating clergy’s training and ordainment. All seven of petitioner’s applications filed with the County were initially completed naming Pastor Gaspar Anastasi as the “officiating clergy.” His credentials were supplied in response to questions calling for the officiating clergy’s background.
Question 7a of the application then asks: “Is any portion of the premises used for purposes other than as residence of the officiating clergy?” On the application for an exemption on Pastor Gaspar Anastasi’s residence, petitioner answered in the negative. On the other six applications, petitioner answered affirmatively and listed each property as the residence of an “Assistant Pastor.”
The application for Pastor Anastasi’s residence was accepted by the County without question. The remaining six applications were returned by the County with a letter dated December 3, 1999 requesting that “the forms be filled out again” and stating that they “were not filled out correctly.” The letter further requested the identities of the assistant pastors and a statement of their duties. Petitioner resubmitted the applications and designated each of the assistant pastors as the “officiating clergy” for each separate parcel at which the respective assistant pastor was in residence. The new application provided each of their names and their respective credentials, as well as a list of their duties within the church. On each application, question 7a was answered in the negative, indicating that the land in question was exclusively used as the residence of that particular “officiating” clergyman.
*113 Based on the information provided by petitioner, the County rejected the six applications for tax exemption. The County argues that the phone number on each application, even after the corrections, is the same as the number listed on Pastor Anastasi’s application and thus seems to indicate that the clergymen listed are not actually “officiating” clergymen but rather subordinates to Pastor Anastasi. The County further argues that the job descriptions do not meet the definition of “officiating clergy” as contemplated by the statute. Further, the County denied the applications on the ground that designating a “Senior Pastor” will render the “Assistant Pastors” subordinate, and thus not “officiating.”
On or about July 25, 2000, the petitioner filed applications with the Village of Freeport for tax exemption on four of the six properties at issue, as these appear to be the only properties located within the Village’s jurisdiction. These properties are located at 79 South Bayview Avenue; 29 Stillwell Place; 10 Layton Street; and 214 Pennsylvania Avenue, all in Freeport, New York. On or about November 2, 2000, petitioner received notification that all four properties were denied tax exemption on the grounds that they were not the residences of “officiating clergy.”
Petitioner contends that denial of these exemption applications by both the County and the Village was arbitrary and capricious. Further, petitioner contends that these denials violated its constitutional rights to equal protection and the free exercise of religion under both the New York and United States Constitutions.
The statutes governing tax exemption for real property are RPTL 420-a and 462. Section 420-a (1) (a) provides tax exempt status for:
“[r]eal property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, or moral or mental improvement of men, women or children purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section” (emphasis added).
The County correctly argues that the properties at issue are not eligible for exemption under RPTL 420-a because they are *114 not being claimed as properties used exclusively for religious purposes. Rather, petitioner readily admits that the properties are being used as residences for officiating clergy. As such, these properties should be claimed under RPTL 462, which states: “[i]n addition to the exemption provided in section four hundred twenty-a of this article, property owned by a religious corporation while actually used by the officiating clergymen thereof for residential purposes shall be exempt from taxation.” The definition of “officiating clergymen” is dispositive of the question of whether each parcel of land qualifies for an exemption under RPTL 462.
The Real Property Tax Law does not define the term “officiating clergymen.” As such, the court looks for guidance to section 2 of the Religious Corporations Law, which defines the term “clergyman” as: “a duly authorized pastor, rector, priest, rabbi, and a person having authority from, or in accordance with, the rules and regulations of the governing ecclesiastical body of the denomination or order, if any, to which the church belongs, or otherwise from the church or synagogue to preside over and direct the spiritual affairs of the church or synagogue.”
Since the Word of Life Ministries does not have a “governing ecclesiastical body,” the church is free to decide whom it considers a “duly authorized pastor.” In order to determine whether the “duly authorized pastor(s)” in question fall within the meaning of RPTL 462, however, we must look to other sources for the criteria used to distinguish “clergymen” from “officiating clergymen.”
The case law on this subject is limited. While the New Jersey courts, cited by respondents, require an examination of the “extent of the clergyman’s activities” (Friends of Ahi Ezer Congregation v Long Branch City, 16 NJ Tax 591, 595), New York courts have looked only peripherally at the responsibilities of the clergymen to determine whether they fall within the definition of “officiating clergy” (see, Matter of Holy Trinity Orthodox Church of E. Meadow v O’Shea, 186 Misc 2d 880, 883; Temple Beth Sholom, Inc. of Roslyn, N.Y. v Nassau County Dept. of Assessment, NYLJ, Dec. 12, 2001, at 22, col 4). The recent case of Temple Beth Sholom, Inc. of Roslyn, N.Y. v Nassau County Dept. of Assessment (supra) is instructive in this regard. That court held that where a clergyman is employed full time by a religious corporation, and has the authority to conduct secondary services and weddings, teach, visit congregants, and substitute for the rabbi when (s)he is not available, that clergyman is an “officiating clergyman” within the *115 meaning of the statute (id.). Likewise, it has been held that an ordained member of the clergy who cannot officiate at weddings or funerals cannot be considered an “officiating clergy” within the meaning of the statute (see, Holy Trinity Orthodox Church of E. Meadow v O’Shea, supra).
Plaintiff has provided affidavits from the pastors in question which attest to their status as full time employees of the church. They further state that they have no other employment outside the church and list extensive teaching, counseling, and administrative duties at the church. These include assisting in officiating at Sunday services. At his examination before trial, Pastor Anastasi testified that all eight of the pastors, himself included, perform wedding ceremonies, funeral services and the like.
Pastor Anastasi further testified that the title of “assistant pastor” no longer exists; that all seven of those formerly described as “assistant pastors” are actually full pastors of the church and have been since the titles were changed approximately 10 years ago. While this testimony is inconsistent with the information provided on the applications filed just two years ago, wherein each clergyman was listed as “assistant pastor,” Pastor Anastasi explains that the descriptions given to the County are no longer accurate; that they were drafted between two and eight years ago and that the duties of the pastors have changed considerably due to the growth of the church. He attributes the use of out-of-date titles on the applications to petitioner’s belief that renewal of prior exemptions required only a recitation of previously supplied information.
Petitioner further argues that the government has no place deciding who qualifies as officiating clergy at the Word of Life Ministries, as this responsibility resides in the religious institution itself (see, Religious Corporations Law § 2). Since Word of Life Ministries does not have a governing ecclesiastical body, petitioner argues that it alone may define whom within the church qualifies as “officiating clergy.” The Church has defined the “assistant pastors’ ” job descriptions as including significant and substantial responsibilities within the church, such as extensive teaching, counseling, and administrative duties, as well as assisting in officiating at Sunday services.
The court concludes that the duties performed by the pastors in question comport with those of “officiating clergy” by any reasonable definition of that term or sensible interpretation of the statute. As such, each pastor is entitled to an exemption for his or her respective residence (see, Holy Trinity Orthodox *116 Church of E. Meadow v O’Shea, supra; Temple Beth Sholom, Inc. of Roslyn, N.Y. v Nassau County Dept. of Assessment, supra).
While the court need not address petitioner’s additional argument that the respondents are estopped from denying the tax exemption on these properties because they have granted them in the past and the applications at issue are simply renewal forms, the court nonetheless notes that “absent an unusual factual situation, the doctrine of estoppel may not be invoked against a governmental agency engaged in the exercise of its governmental functions * * * Indeed, estoppel traditionally is applied in taxation cases ‘only when it is necessary to prevent manifest injustice’” (Matter of Rashbaum v Tax Appeals Trib. of State of N.Y., 229 AD2d 723, 725 [citations omitted]). Here, a fair application of the statute as written obviates the need to determine if a “manifest injustice” has taken place.
The Village also argues that petitioner is bound by the representations in its applications. The court finds that petitioner’s careless completion of the applications is a testament to its perception that the forms were simply renewal applications and its belief that there could be no doubt as to its entitlement to the exemption. Accordingly, it is hereby ordered that the petition for an order pursuant to article 78 of the CPLR, annulling and vacating the determination by the County dated April 1, 2000, is granted in its entirety. The respondent County of Nassau is directed to:
(1) remove the subject premises: 10 Layton Street, Freeport, New York (62-094-134); 214 Pennsylvania Avenue, Freeport, New York (54-053-254); 79 South Bayview Avenue, Freeport, New York (54-091-225); 29 Stillwell Place, Freeport, New York (62-050-30); 62 Henry Street, Hempstead, New York (34-397-212); and 1134 Van Burén Street, Uniondale, New York (36-150-416) from the taxable assessment roll, provided that said premises continue to be used as parsonages consistent with RPTL 462;
(2) refund any taxes paid by the petitioner on the subject premises for the tax year 2000-2001, and any tax year thereafter, if applicable. It is further ordered that petitioner’s request for an order annulling and vacating the November 2, 2000 determination by the Village is granted in its entirety. The respondent Village of Freeport is directed to:
(1) remove the subject premises: 10 Layton Street, Freeport, New York (62-094-134); 214 Pennsylvania Avenue, Freeport, New York (54-053-254); 79 South Bayview Avenue, Freeport, *117 New York (54-091-225); and 29 Stillwell Place, Freeport, New York (62-050-30) from the taxable assessment roll, provided that said premises continue to be used as parsonages consistent with RPTL 462;
(2) refund any taxes paid by the petitioner on the subject premises for the tax year 2000-2001, and any tax year thereafter, if applicable.
Ordered that petitioner shall be awarded a separate bill of costs against respondents in the respective special proceedings.