OPINION OF THE COURT
Wachtler, J.
The main issue on this appeal is whether individual taxpayers may, by way of an article 78 proceeding, challenge wholesale religious exemptions from taxation granted to other property owners. The Appellate Division held that in this situation the exclusive procedure for the challenge was article 7 of the Real Property Tax Law.
The instant litigation, as well as the litigation involved in two related appeals (see Town of Hardenburgh v State of New York, 52 NY2d 536; and Matter of State Bd. of Equalization & Assessment v Kerwick, 52 NY2d 557 [both decided herewith]), came about as a result of the dramatic increase in the number of parcels of land accorded tax-exempt status by respondent Kerwick, the Assessor of the Town of Hardenburgh, in 1977. It is undisputed that this increase was due to the enrollment, en *548 masse, of 88% of the town’s landowners as officers in an allegedly religious denomination known as the Universal Life Church. It appears that all Universal Life Church members who sought an exemption received one. The facts in the petition, which for present purposes are assumed to be true, state that on April 27, 1977 Kerwick telephoned petitioner James Dudley and informed him that if he failed to become a Universal Life Church follower he, along with 12% of the remaining landowners, would have to pay the full $500,000 annual governmental expense of the town. Allegedly Kerwick also represented that as assessor, he intended to accept and approve all exemption applications filed by members of the Universal Life Church and that should petitioner Dudley desire to join he could do so at the town supervisor’s house. Dudley refused.
Within four months of the filing of the assessment roll, Dudley commenced this article 78 proceeding seeking to challenge Kerwick’s actions. Shortly thereafter, petitioner State of New York, a substantial landowner and taxpayer in the town, also brought an article 78 proceeding seeking essentially the same relief. In both proceedings, petitioners sued on behalf of themselves and other taxpayers similarly situated. Respondents moved to dismiss in both cases on various grounds including failure to state a cause of action, failure to join necessary parties and untimeliness. Special Term, treating the proceedings in a joint opinion, denied respondents’ motions to dismiss and allowed the matter to proceed as a class action on behalf of all nonexempt property owners. The Appellate Division reversed, based on its conclusion that article 7 of the Real Property Tax Law was petitioners exclusive method to challenge the exemptions, and that the 30-day Statute of Limitations contained in section 702 of the Real Property Tax Law had run. We disagree.
Historical background and a practical construction of article 7 of the Real Property Tax Law indicate that it was designed by the Legislature as a remedy for the taxpayer who wishes to challenge an excessive or illegal assessment on property in which he has an ownership interest (Matter of Board of Educ. v Parsons, 61 Misc 2d 838, *549 842). It was not designed to reach the unusual situation encountered here, where taxpayers concede the propriety of their own assessments, but seek instead to challenge the assessor’s action in granting wholesale exemptions to other properties within the town.
The ancestry of what is now article 7 can be traced back to the common-law writ of certiorari which allowed review of tax assessments only upon the limited grounds of an assertion of want of jurisdiction, or some basic illegality, as distinguished from errors in judgment on questions of fact or law (History of Tax Certiorari Proceedings, Fifthteenth Ann Report of NY Judicial Council, 1949, pp 324, 325). The function of the common-law writ, however, was not broad enough to provide review of assessments on the grounds that they were excessive or unequal (People ex rel. Kendall v Feitner, 51 App Div 196, 199) and to remedy this perceived defect in the common law, the first statutory certiorari proceeding to review tax assessments was enacted in 1880 (L 1880, ch 269). The tax certiorari proceeding subsequently was made a part of the Tax Law in 1896 (L 1896, ch 908, §§ 250-264), and in 1909 it was enacted as article 13 of the Tax Law (L 1909, ch 62) [1] In 1959, article 4.3 was superseded by the provisions of article 7, which, insofar as we are here concerned, was not designed to make any substantive change (see Governor’s Memorandum, NY Legis Ann, 1958, p 496; Kilmer, Introduction to the Real Property Tax Law, reprinted in McKinney’s Cons Laws of NY, Book 49A, Real Property Tax Law [1960], p XXIII, at p XXXIII).
It is clear then that the tenor of article 7 is to provide an expeditious procedure by which the numerous and ex-pectable challenges by taxpayers of their own assessments can be resolved (Matter of Board of Educ. v Parsons, 61 Misc 2d 838, supra). It is reasonable in this situation that the Statute of Limitations be very short, because the taxpayer has before him, or can shortly assemble, all the per *550 tinent facts demonstrating that his particular assessment is overvalued, illegal or unequal to others (Real Property Tax Law, § 706). Viewed in this light, Matter of Hellerstein v Assessors of Town of Islip (37 NY2d 1) properly was brought as an article 7 proceeding, even though the taxpayer challenged the legality of every assessment on the roll, because such a wholesale challenge was a logical derivation of the taxpayer’s challenge to the legality of her own assessment, on the ground that the assessor had failed to assess property in the taxing unit at full value (see Real Property Tax Law, § 306). But no such situation exists in this, case, where the taxpayers concede the legality of their own assessments, where activities of the assessor which are challenged pertain to many other parcels on the assessment roll, and where the facts must be developed concerning a multitiude of specific exemptions. Such a challenge is outside the scope and intent of article 7 and, accordingly, the Appellate Division was incorrect in applying the 30-day Statute of Limitations contained in article 7.
It being clear that petitioners do not challenge governmental action with regard to their specific assessments, the question remains whether the activity challenged falls within the ambit of CPLR article 78. The gist of the petitions is that they allege a broad perversion of the entire process of granting exemptions, with the resulting deterioration of the tax base and imposition on petitioners of a hugely disproportionate share of municipal expenses. Without doubt petitioners have alleged a wrong; the question is whether they have a remedy.
In arguing that they do not, respondents placed great reliance on an 1893 opinion of this court in the case of Van Deventer v Long Is. City (139 NY 133, 138) in which it was stated: “The question may be asked, what is the remedy of the taxpayer whose taxes are too high because some property has been omitted from the assessment roll? Where the omission is intentional he may prosecute the assessors criminally for taking a false oath to the assessment roll. His remedies may be very inadequate. But he is in the position of every citizen aggrieved by governmental action. He must appeal to public opinion and to the ballot, *551 and use his efforts to procure the election of better or more competent assessors.”
The inherent flaw in this statement is clearly reflected in the present case. There is little likelihood that the populace of the Town of Hardenburgh will exercise the ballot to remove respondent Kerwick. In this town, if the petitions are to be believed, the only assessor likely to be removed is not the one who acts to create the injustice, but instead one who terminates it. It is precisely this type of tyranny of the majority[2] which the Van Deventer rule endorses and for this reason we deem the above-quoted language ill-advised, as well as inconsistent with the more recent trend of liberalizing the ability of taxpayers to challenge governmental action (see Boryszewski v Brydges, 37 NY2d 361). Therefore, to the extent that Van Deventer is inconsistent with the result we reach in this case, it is expressly disapproved.
The petitioners here have alleged far more than erroneous determinations regarding some of the property in the town. They accuse the assessor of virtually ignoring statutory guidelines in granting exemptions to Universal Life Church members. In this situation, if we hold he may do so with impunity, we would, in essence, give assessors unbridled authority to create new grounds for exemption as they please, by the device of warping those statutory exemptions presently in effect. It is axiomatic that the Legislature, not the assessor has authority to create grounds for exemption from taxation. When an assessor grants exemption from taxation in wholesale fashion indicating that he has arrogated this legislative power to himself, he cannot cloak himself with protection surrounding individual discretionary decisions, and relief by way of an article 78 proceeding will lie.
*552 To be sure, in view of the public interest against frequent second-guessing of assessment decisions, the burden the petitioners must carry in this case is not slight. However, we need not decide at this juncture whether this burden has been met, and it suffices to note that petitioners have alleged a broad conspiracy involving arbitrary and bad-faith abuses of the exemption process.
There remains to be discussed the procedural context in which this challenge is to go forward. As stated previously, the Special Term permitted the petitioners to sue as a class on behalf of themselves and other similarly situated taxpayers. The Appellate Division, however, declined to rule on the propriety of this device because of its erroneous view that the proceedings were time barred. For this reason a remittal is necessary to provide the Appellate Division with an opportunity to exercise its discretion.
We are also presented with the question as to whether the persons who enjoyed the religious exemptions from taxation should be joined as parties. Because, in essence, petitioners seek to have this significant privilege revoked, we think it beyond any doubt that these persons are necessary parties (see CPLR 1001; City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475; Siegel, New York Practice, § 132, pp 162-163). The petitioners have by their amended petition sought to join as a respondent class the exempted property owners. It is specifically recognized in CPLR 901 (subd a), that whereas joining respondents as a class may be appropriate, such joinder may present additional problems (see Siegel, New York Practice, § 146, pp 188-189).[3] In any event, the intial determination in this regard is a matter of discretion which has not yet been exercised and is a matter to be addressed on remittal. Of course in the event that class treatment is found inappropriate, this does not rule out joinder in a more conventional fashion.
Accordingly, the orders of the Appellate Division should *553 be reversed, and the matter remitted to that court for further proceedings in accordance with this opinion.

. Article 13 was completely revised in 1949 to eliminate some anachronistic procedural formalities, but the substantive nature of the proceeding remained unchanged (Fifteenth Ann Report of NY Judicial Council, 1949).

. The dissenter’s suggestion that the “tyranny of the majority” is the political norm misses the point. In no way do we suggest that the people’s will as expressed in an election is to be circumvented by judicial proceedings. The issue of religious exemptions was never approved in Hardenburg — even if it had, approval by local referendum cannot justify actions of an assessor in direct contravention of State law. It is the Legislature, not the town assessor, which determines the qualifications for exemption. In this instance emphasis on the sanctity of the elective process is more appropriately placed on lawful enactments of the duly elected State Legislature.

. Joining respondents as a class may well pose a problem in this case in the event that further development of the record indicates that the situation of each exempted landowner poses differing facts reflecting on the legitimacy of the exemption.