■ In the Matter of the CHURCH OF SCIENTOLOGY OF NEW YORK, Appellant-Respondent, v TAX COMMISSION OF THE CITY OF NEW YORK, Respondent-Appellant.—Order and judgment (one paper), Supreme Court, New York County (Richard Lee Price, J.), entered June 27, 1984, granting the petition to the extent of remanding the matter to the Tax Commission for a rehearing, in accordance with Special Term's decision (124 Misc 2d 720), on the question of whether petitioner is a bona fide religious organization and to determine whether three specific parcels of real property owned by it are entitled to real property tax exemptions, unanimously modified, on the law, without costs, the judgment vacated and the matter remanded to the Supreme Court for a hearing, either before a Justice of the Supreme Court or a Special Referee, pursuant to CPLR 7804 (h), on the factual issues consistent and in

accordance with this memorandum. The appeal from the order (same court) entered February 1, 1985, denying respondent Tax Commission's motion for reargument is dismissed as nonappealable, without costs.

This CPLR article 78 proceeding was brought to vacate and annul a determination of the Tax Commission, which denied petitioner's application for tax exemption as a religious institution on three parcels of real estate. Initially, petitioner had applied for an exemption with respect to its property at 28 West 74th Street, which it sold in 1980. Thereafter, it purchased 349 West 48th Street and 227 West 46th Street and applied to exempt those properties. The application sought exemption under Real Property Tax Law § 420-a (1), which provides:

"(a) Real property owned by a corporation or association organized or conducted exclusively for religious * * * purposes, and used exclusively for carrying out thereupon * * * such purposes * * * shall be exempt from taxation as provided in this section.

"(b) Real property such as specified in paragraph (a) of this subdivision shall not be exempt if any officer, member or employee of the owning corporation or association shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association or for any of its members or employees; or if it be not in good faith organized or conducted exclusively for one or more of such purposes."

Petitioner is one of several New York branches of an international Scientology organization, which, it is alleged, licenses 33 churches and missions in the United States. It was incorporated in New York in 1955 as a religious corporation under Religious Corporations Law article 8. Its founder, the late L. Ron Hubbard, was a noted mystery and science fiction author.

After a one-day, actually a one-hour, hearing held on June 14, 1978, at which one witness (petitioner's president) testified, the Tax Commission embarked upon an information-gathering project which lasted four years, including extensive correspondence and the submission of detailed exhibits. In a written

decision, dated January 20, 1983—4½ years after the "hearing"—respondent denied the application for tax exemptions on the three properties for the tax years 1978/1979 through 1982/1983, concluding that "we do not recognize the applicant as having any real religious purpose nor do we find that its doctrines, and teachings constitute a religion. We don't deny that applicant asserts that its purposes and activities are religious, however, we conclude that such assertion is merely tendentious and not in good faith."

In challenging petitioner's good faith, the decision referred to the inconsistency between material submitted by petitioner and that obtained through the Commission's own investigation. These consisted of (1) petitioner's claim that, since September 1, 1966, Hubbard did not "personally" direct the activities of the Scientology organizations, in contrast to statements in Scientology literature that Hubbard had copyrighted material relating to policy matters, such as recruitment, auditing and donations expected from members; and (2) discrepancies in the proof as to the percentage of income, generated from weekly donations, used for salaries and benefits. Respondent found that petitioner was a self-help group, designed to enhance the mental well-being of its members through application of a philosophy known as Dianetics, but that this purpose, the search for the true meaning of life, was not a proper basis for entitlement to real estate tax exemption. In questioning petitioner's status as a bona fide religion, the determination referred to a quotation by petitioner's founder, Hubbard: "Writing for a penny a word is ridiculous. If a man really wants to make a million dollars, the best way would be to start his own religion."

Further, it was observed that an organization "which is a guise for directly or indirectly making pecuniary profit or which is not organized in good faith for an exempt purpose" is not entitled to a tax exemption. Concluding that petitioner exhibited "a pattern of conduct by which beliefs were originally labelled non-religious and, subsequently, after challenges by regulatory agencies, were labelled religious", it was decided that petitioner had not satisfied its burden of demonstrating that it was conducted "exclusively" for religious purposes and the properties were used for petitioner's general purposes. Accordingly, it was found petitioner was not entitled to an exemption.

Special Term, critical of certain findings made and the procedure employed by the Commission in its "brief hearing", remanded the matter to the Commission for a rehearing to

examine, *inter alia,* the profit-making character of the church, the alleged use of coercion and other tactics against followers who wished to leave or outsiders who opposed its practices, and other factors which may be relevant on the tax exemption issue. The court found respondent had improperly considered matter outside the record in concluding that petitioner was not a bona fide religion and directed the Commission, on remand, to set forth the objective tests used and to determine whether petitioner met the standard or, alternatively, set forth the manner by which it failed to meet the standard.

While we agree with Special Term that the present record is inadequate to determine whether the Commission acted arbitrarily or capriciously, it erred in remanding the matter to the Commission for a further hearing. In this respect, we find our holding in *Matter of Holy Spirit Assn. v Tax Commn.* (62 AD2d 188) dispositive on the issue.* In that case, where an article 78 proceeding had been transferred to this court, albeit improperly, we retained jurisdiction but, since the record was "not sufficient to permit an informed judgment as to whether the administrative body had acted arbitrarily or capriciously" *(supra,* at p 194) in denying the tax exemption, we held the proceeding in abeyance and remanded the matter to the Supreme Court for a hearing. In doing so, we cited "the inadequacy of the record as to the dominant purposes of petitioner and the actual use of the properties in question" *(supra,* at p 196) and, in terms of the nature of the hearing to be held, directed: "The hearing will be plenary and, unlike the one conducted by the Tax Commission, adversarial as well. Because of the obscurity of the administrative hearing record, we have concluded to direct a full examination of the facts and a broad inquiry into petitioner's predominant purpose especially since that was the sole basis on which the Tax Commissioners attempted to concentrate in deciding the exemption applications, and also into the actual uses to which the subject properties are being devoted." *(Supra,* at p 198.)

Contrary to petitioner's argument, in order to satisfy requisite due process standards, it was not necessary that there be a full adversarial hearing before the Commission. Generally, administrative proceedings need not conform to all of the requisites and evidentiary rules adhered to in judicial tribunals. Judicial review, through an article 78 proceeding, is sufficient for that purpose, particularly bearing in mind the power of the court to order a trial where there is a factual

---

* For subsequent history, *see,* 55 NY2d 512, *revg* 81 AD2d 64.

issue relating to the ultimate question—whether the administrative tribunal acted in an arbitrary or capricious manner (CPLR 7804 [h]). This was directed in *Holy Spirit Assn. (supra)*, although, there, we retained jurisdiction and held the proceeding in abeyance pending remand for a hearing before a Special Referee, as required under CPLR 7804 (h), since the proceeding had been transferred to us. In doing so, we followed established authority permitting us to decide the proceeding on the merits in spite of the improper transfer. *(See, Matter of Holy Spirit Assn. v Tax Commn., supra,* at p 193, and cases cited.)* Unlike the situation in *Holy Spirit Assn.,* however, here Special Term passed upon the merits of the petition but erred in not ordering an evidentiary plenary hearing. It had the power to do so and, in the face of the inadequacy of the present record, should have so directed.

Essentially, there are three factual issues which are not adequately developed in the record so as to permit us to make a reasoned determination as to whether respondent acted arbitrarily or capriciously in denying the applications for a real estate tax exemption. These pertain to the statutory standard for an exemption contained in RPTL 420-a (1).

First, it is contended that petitioner is not an organization which, within the terms of the statute, is "organized or conducted exclusively for religious * * * purposes" (para [a]). Instead, it is claimed that petitioner's primary purpose is the conduct of a commercial enterprise to generate profit, as evidenced by the substantial profit which results from the sale of auditing services and products, its aggressive promotional activity, payment of commissions on the sale of services and accumulation of large cash reserves. Reference is made to Scientology's own policy order issued in 1972 to "make money" and, as an illustration, respondent points to the alleged profit-making motive underlying the sale of E-meters, the large sums realized, and the abusive tactics and coercion claimed to be employed against members who seek to leave the church. Petitioner, on the other hand, denies that there has been any coercion and, to the extent there were any tortious acts, claims that this was not by petitioner but by individuals acting in a private capacity and that there are available judicial remedies. Clearly, a full exploration of the facts is needed to determine whether petitioner is organized or conducted for bona fide religious purposes.

The second factual issue, which cannot be resolved on the insufficient record, is whether petitioner's income inured to the benefit of its founder through royalty arrangements or

otherwise. It is charged that there was a long-standing arrangement of self-dealing, by which certain practices of petitioner were designed to generate an income for the benefit of Mr. Hubbard. Thus, it is urged that books and artifacts were purchased by petitioner, resold at higher prices to its own members and that Hubbard had a royalty arrangement which gave him 10% of the retail price. Further, while it has been claimed that petitioner counselled members without charge, this is inconsistent with and counter to its practice of selling auditing services. Petitioner, on the other hand, denies that there was any inurement of profit to the benefit of Hubbard and no royalty arrangement. While the Tax Commission did not make an express finding on this issue, nevertheless, it does have a direct bearing upon the application for real estate tax exemption under RPTL 420-a (1).

This issue, as well as that pertaining to whether petitioner, in good faith, is organized or conducted "exclusively" for religious purposes and not as "a guise or pretense for directly or indirectly making any other pecuniary profit" (RPTL 420-a [1] [b]), cannot be resolved on the inadequate record before us. A full evidentiary hearing is necessary and should have been ordered by Special Term. This is the central purpose underlying CPLR 7804 (h).

At such hearing, there should be an additional inquiry relating to the third factual issue, which, under the statute, must be decided on an application for real estate tax exemption, namely, whether the premises were being used exclusively for petitioner's religious purposes. This issue is critical in that the statute expressly provides that, in order to qualify for an exemption, the property must be "used exclusively" for such religious purposes. (RPTL 420-a [1] [a]; see, Matter of Holy Spirit Assn. v Tax Commn., supra, at p 198.)

These and any other factual issues bearing upon the statutory standard for real estate tax exemption may be fully explored at the Supreme Court hearing, which, as we observed in Holy Spirit Assn. (supra, at p 198) shall be "a full examination of the facts and a broad inquiry into petitioner's predominant purpose * * * and also into the actual uses to which the subject properties are being devoted". The findings will be critical in determining whether respondent acted arbitrarily or capriciously in denying the exemption. Concur—Kupferman, J. P., Sandler, Carro, Lynch and Kassal, JJ.