In the Matter of NEW YORK STATE ASSOCIATION OF TOBACCO AND CANDY DISTRIBUTORS, INC., Appellant, v NEW YORK STATE TAX APPEALS TRIBUNAL et al., Respondents.

Third Department, July 19, 1990

APPEARANCES OF COUNSEL

*Parker Chapin Flattau & Klimpl (Amos Alter* of counsel), for appellant.

*Robert Abrams, Attorney-General (Wayne Benjamin* of counsel), for New York State Tax Appeals Tribunal and another, respondents.

*Hodgson, Russ, Andrews, Woods & Goodyear (Paul I. Perlman* of counsel), for Target Cooperative Buying Association., Inc. and others, respondents.

### OPINION OF THE COURT

CASEY, J.

■ At issue on this appeal is whether petitioner has standing to seek CPLR article 78 review of a final determination of respondent State Tax Appeals Tribunal rendered in an administrative proceeding to which petitioner was not a party. Supreme Court held that petitioner lacked standing, and the petition was dismissed. We affirm.

The members of Target Cooperative Buying Association, Inc., a cooperative corporation consisting of a number of individual merchants who sell cigarettes at retail (hereinafter respondent retailers), filed applications with the Department

of Taxation and Finance seeking to register themselves as a chain store in order to obtain certain favorable treatment accorded chain stores by the Cigarette Marketing Standards Act (Tax Law art 20-A). The Department's Division of Taxation denied the application on the ground that the corporation was not operating in compliance with the Cooperative Corporations Law. Respondent retailers pursued the administrative appeal process provided for in Tax Law article 40, which culminated in a final determination in their favor by the Tax Appeals Tribunal granting their applications to register as a chain store.

Petitioner, a corporation comprised of approximately 70 wholesale cigarette distributors, commenced this CPLR article 78 proceeding to review the determination of the Tax Appeals Tribunal. According to petitioner, the determination to allow respondent retailers to register as a retail chain violates the legislative intent of the Cigarette Marketing Standards Act and will ultimately lead to the destruction of the wholesale cigarette distribution industry in the State.

In *Matter of Dairylea Coop. v Walkley* (38 NY2d 6, 11-12), the Court of Appeals applied the zone of interest test and explained: "[W]here a statute reflects an overriding legislative purpose to prevent destructive competition, an injured competitor has standing to require compliance with that statute * * *. This is particularly true where * * * the agency is authorized to act without any hearing whatsoever. To deny petitioner standing would invite the subversion of the legislative goal of maintaining a healthy competitive atmosphere in the * * * industry".

The enactment of Tax Law article 20-A includes the following statement of legislative intent: "The legislature hereby finds that it is necessary to regulate and control the sales price of cigarettes within the state at the wholesale and retail levels for the purpose of stabilizing the cigarette industry in New York state" (L 1985, ch 897, § 1). Petitioner appears to claim that the determination to register respondent retailers as a retail chain will destabilize the wholesale cigarette industry in New York, and that as the representative of nearly 80% of the wholesalers in New York it is within the zone of interest and, therefore, has standing to challenge the determination. Respondents concede that the right to challenge administrative action has been enlarged by the Court of Appeals in recent years, but they point out that in so doing the court has "carefully examined the relevant statutes and precedents,

ascertaining the presence or absence of a legislative intention to preclude review. Only where there is a clear legislative intent negating review * * * or lack of injury in fact * * * will standing be denied" *(Matter of Dairylea Coop. v Walkley, supra,* at 11). According to respondents, clear legislative intent negating review can be found in Tax Law § 2016, which provides that "[a] decision of the tax appeals tribunal * * * shall finally and irrevocably decide all the issues which were raised in proceedings before the division of tax appeals upon which such decision is based unless * * * the petitioner who commenced the proceeding petitions for judicial review in the manner provided by [CPLR article 78]".

We conclude that Tax Law § 2016 does not reveal the necessary clear legislative intent negating review by an aggrieved person who was not, and could not, be a party to the administrative appeal process. Had the Division of Taxation granted the applications of respondent retailers in the first instance, there would have been no administrative review *(see,* Tax Law § 2008) and Tax Law § 2016 would have been inapplicable. The question of petitioner's standing, then, would had to have been resolved without reference to Tax Law § 2016, and we see no reason to do otherwise merely because respondent retailers had to go through the administrative review process to obtain approval of their applications. In short, we see nothing in Tax Law § 2016 that reveals an intent to deprive standing to a petitioner who might otherwise have standing merely because another party was required to pursue the administrative appeal process in order to obtain the approval which allegedly affects that petitioner's zone of interest.

Despite our rejection of respondents' reasoning, which was adopted by Supreme Court, we agree with the conclusion that petitioner lacks standing to maintain this proceeding. In *Matter of Dairylea Coop. v Walkley (supra),* the petitioner was a competitor of the party who had received the approval at the administrative level, and the Court of Appeals found "no issue as to the deleterious effect on [the petitioner] of the commissioner's action" *(supra,* at 9). Petitioner herein is not a competitor of respondent retailers; rather, it represents a number of wholesalers who are engaged in a different level of the cigarette distribution industry. There is no claim that the singular decision to grant chain store status to the approximately 20 respondent retailers herein has had or will have a significant impact on any wholesaler in particular or the

wholesale industry in general. Rather, it is petitioner's theory that other retailers, seeking to take advantage of the challenged ruling, will form cooperative corporations and register as chain stores, and that eventually a substantial majority of retailers will obtain the benefits of being treated as a chain store, leading to the demise of the wholesale cigarette distribution industry in New York. It is well established that "the administrative decision for which review is sought must be shown to have a harmful effect upon the party asserting standing" *(Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d 436, 443). Since petitioner is not presumptively aggrieved by the determination of the Tax Appeals Tribunal, it must demonstrate that it has suffered "special injury" before it can be accorded standing to review the determination *(Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency,* 76 NY2d 428, 433).

Petitioner mistakenly relies upon *Matter of Dudley v Kerwick* (52 NY2d 542), wherein the Court of Appeals held that individual taxpayers may bring a CPLR article 78 proceeding to challenge wholesale exemptions from taxation granted to other property owners. In so doing, the court focused on the scope of the allegedly wrongful conduct and the resulting harm in concluding that "[w]hen an assessor grants exemption from taxation in wholesale fashion indicating that he has arrogated this legislative power [to create exemptions] to himself, he cannot cloak himself with protection surrounding individual discretionary decisions, and relief by way of an article 78 proceeding will lie" *(supra,* at 551). Petitioner herein seeks only to review an individual discretionary decision to grant chain store status to respondent retailers. In contrast to *Matter of Dudley v Kerwick (supra,* at 552), there is no claim here of a broad conspiracy involving arbitrary and bad-faith abuses of the administrative process.

■ Nor is there any merit in petitioner's reliance on Tax Law § 484 (b) (1), which authorizes an action in Supreme Court to prevent a violation of any of the provisions of Tax Law article 20-A by any person injured by the violation. As petitioner has not sufficiently alleged harm to have standing under the zone of interest test, it clearly is not injured within the meaning of the statute. In any event, the allegedly erroneous administrative decision to register respondent retailers as a chain store is not, in our view, a violation within the meaning of Tax Law § 484 (b) (1).

■ Because petitioner did not participate in the administra-

tive tax appeal procedure governed by Tax Law article 40, we are of the view that petitioner was not bound by the requirement of Tax Law § 2016, which provides that a proceeding to review a decision of the Tax Appeals Tribunal be commenced in this court. Rather, pursuant to CPLR 506 (b) (2), petitioner properly brought this proceeding in Supreme Court.

LEVINE, J. (dissenting). We respectfully dissent. The determination by respondent State Tax Appeals Tribunal challenged by petitioner is that a group of some 24 individual retail cigarette-selling merchants could register as a chain store by becoming members of a cooperative corporation, and thus qualify for the favorable treatment in purchasing cigarettes accorded chain stores under the Cigarette Marketing Standards Act (Tax Law art 20-A) (hereinafter CMSA). It appears to be uncontradicted that CMSA was enacted to stabilize the cigarette industry in New York by regulating and controlling the sales prices of cigarettes at the wholesale and retail levels. Price regulation is achieved under CMSA by fixing minimum markup percentages to be charged at the various stages of the distribution chain. Specifically, CMSA requires the imposition of a minimum 3⅞% markup over cost on sales to regular retailers, ⅞% on sales to wholesalers and 1½% on sales to chain stores (see, Tax Law § 483 [b] [1] [B]). A chain store is defined under the statute as "any person * * * who owns or maintains fifteen or more retail outlets * * * having one hundred percent common ownership, through which cigarettes are sold at retail" (Tax Law § 483 [a] [3]). The definition of chain store also includes "cooperative members, franchisees and large volume outlets" (§ 483 [a] [3]).

Petitioner is a membership corporation whose members are wholesale sellers of cigarettes representing 80% of all State-wide wholesale cigarette distribution. The petition and supporting affidavit aver in substance that the respective markup percentages set forth in CMSA were arrived at after extensive fact finding and negotiations resulting in figures reflecting the cost of doing business of those within the chain of cigarette distribution. According to petitioner, respondent Target Cooperative Buying Association (hereinafter Target) does not constitute, and the individual respondent retail cigarette sellers did not form, a bona fide cooperative within the contemplation of CMSA (Tax Law § 483 [a] [3], [5]). Instead, Target was merely a device created solely for the purpose of changing respondent sellers' status from retail dealer to that of a chain

store, thereby taking advantage of the lower statutory minimum markup percentage for the latter category. It is further alleged that it was on this basis, i.e., that Target was not a bona fide, operationally functional cooperative but was formed solely to achieve chain store status for its members, that the Department of Taxation and Finance refused registration as a chain store to Target and its members. Petitioner's averments further state in substance that the Tax Appeals Tribunal's contrary ruling is affected by an error of law and is contrary to the express legislative intent in thus permitting cigarette retailers to achieve the advantages of chain stores by the simple expedient of joining a cooperative whose sole purpose and function is to provide that status.

The ground upon which Supreme Court found that petitioner lacks standing, and that relied upon by respondents on this appeal, was that Tax Law § 2016 evinced a legislative intent to limit access to judicial review of Tax Appeals Tribunal decisions to the petitioner at the administrative proceeding (citing, inter alia, Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 11). We agree entirely with the reasoning of the majority demonstrating that this ground for denying standing is untenable. We cannot agree, however, with the majority's conclusion that petitioner has not adequately pleaded that its members are harmed by the Tax Appeals Tribunal's decision and that petitioner lacks standing for that reason. In essence, petitioner has alleged that the purely formalistic approach of the Tax Appeals Tribunal's decision in determining whether cigarette retailers are members of a cooperative for purposes of CMSA will enable such retailers throughout the State to circumvent the carefully balanced pricing and profit structure of the statute, thus avoiding payment of the proper markup for sales from wholesalers to retailers, without diminishing the retailers' independence or otherwise changing to any meaningful extent the manner in which they conduct business. In other words, petitioner claims that the precedent created by the Tax Appeals Tribunal's decision, which is binding on the Department of Taxation and Finance, readily permits all cigarette retailers within the State to pay a lesser markup for their cigarettes than CMSA envisaged, and in turn, this will adversely impact on the stability of the cigarette industry in the State.

In our view, the potential loss of profits for petitioner's members, as cigarette wholesalers, and the threatened impact on the cigarette industry from the precedent of the Tax

Appeals Tribunal's decision are sufficiently harmful effects to confer standing. The rationale for finding the sufficiency of the claimed harm here is the same as in *Matter of Bradford Cent. School Dist. v Ambach* (56 NY2d 158), a case in which the Commissioner of Education awarded permanent certification to a teacher without the recommendation of the employee school district, despite a requirement for such a recommendation under the applicable regulations. In *Bradford,* this court found no standing on the part of the school district because it was not aggrieved by the grant of certification to the teacher. The court reasoned that the school district could not "be held liable for hiring an unqualified teacher when the teacher in question has been certified by the State. Moreover, it is most significant that the matter of certification relates to respondent['s] * * * right to be licensed generally to teach in the public school system of the State and does not directly concern the district in its employer-employee relationship with her" *(Matter of Bradford Cent. School Dist. v Ambach,* 82 AD2d 962, *affd* 56 NY2d 158, *supra).* The Court of Appeals in *Bradford* nonetheless held that the petitioner school board was injured "by virtue of the commissioner's *interpretation* of [the] regulation" *(Matter of Bradford Cent. School Dist. v Ambach,* 56 NY2d 158, 164, *supra* [emphasis supplied]). The court further held that "[w]hen the commissioner interprets his regulations, as he did in this case, in a manner which *arguably interferes with the discretion granted by those regulations to local school boards,* there is sufficient injury to justify conferring standing" *(supra,* at 164 [emphasis supplied]). So, too, this court in *Rex Paving Corp. v White* (139 AD2d 176) found that a contractor, which was ineligible for the benefits of certain State affirmative action programs favoring minority business enterprises, had standing to challenge the validity of such programs on the basis of "the *potential* effect on plaintiff's ability to participate in government contracts" *(supra,* at 182 [emphasis supplied]). Clearly, the decision petitioner seeks to challenge here, in its interpretation and application of the pertinent provisions of CMSA, has a serious potential impact upon petitioner's members, who comprise businesses handling 80% of the entire wholesale distribution of cigarettes in the State.

An additional reason to find standing here is that unless petitioner's challenge is entertained, the ruling of the Tax Appeals Tribunal will in all likelihood escape judicial review *(see, Rex Paving Corp. v White, supra,* at 181-182; *Matter of*

*New York State Assn. of Community Action Agency Bd. Members v Shaffer,* 119 AD2d 871, 875). For the foregoing reasons, we would reverse. Since this petition is not a challenge pursuant to Tax Law § 2016 and respondents have never answered the petition or otherwise addressed the merits before Supreme Court or on this appeal, we would remit to Supreme Court for further proceedings in the exercise of its statutory original jurisdiction to determine this petition *(see,* CPLR 506 [b] [2]; 7804).

MAHONEY, P. J., and HARVEY, J., concur with CASEY, J.; WEISS and LEVINE, JJ., dissent and vote to reverse in an opinion by LEVINE, J.

Judgment affirmed, without costs.