OPINION OF THE COURT
Nicholas Colabella, J.
In a proceeding pursuant to CPLR article 78, petitioner seeks to annul a determination by respondent Marrone (Assessor) granting The Nature Conservancy (Conservancy) an exemption from real estate taxes imposed by the Town of North Castle for real property known as the Gibb House parcel.
The Gibb House parcel consists of approximately four acres located across from the 569-acre Mianus River Gorge Wildlife Refuge and Botanical Preserve (Preserve) — a nature preserve located in the Towns of North Castle, Bedford and Pound Ridge. The Gibb House parcel and the Preserve are owned by the Conservancy and managed by a local organization known as the Mianus Gorge Preserve, Inc. Both corporations are not-for-profit tax-exempt corporations dedicated to the preservation of the natural environment.
Petitioner challenges the exemption for the Gibb House parcel on the basis that it is not reasonably incidental to the purposes of the Preserve in that it is used and occupied by the executive director, primarily and principally, as a private residence for her and her family. As support for petitioner’s position, he alleges: (1) the Preserve is open only eight months a year and only during regular business hours; (2) the Preserve has no need for a caretaker or groundkeeper to live on or near the premises; (3) no caretaker functions are performed by the executive director.
The Conservancy concedes that the executive director and her family reside at Gibb House, but argues that Gibb House is incidental to the operation of the Preserve. It alleges Gibb House functions as the Preserve’s administrative center containing its files, records, archives, and provides conference and *166 workshop facilities. In addition, the Conservancy alleges Gibb House provides housing necessary to maintain a full-time steward of the Preserve. The site itself is considered to be integral to this purpose in that it provides a watchpost over the Preserve’s entrance.
The Conservancy contests petitioner’s standing to maintain this proceeding, and asserts that petitioner’s motivation is suspect, alleging that petitioner, who is a developer, not a resident of the town, is attempting to retaliate for (1) the Conservancy’s participation in SEQRA proceedings, in which it opposed petitioner’s plans to subdivide a 36-acre parcel of undeveloped property across Mianus River Road from the Preserve’s trail entrance, and (2) the Conservancy’s intervention in two CPLR article 78 proceedings brought by petitioner against the Town of Bedford Planning Board related to the subdivision. The Conservancy characterizes the within suit as what has come to be known as a "Strategic Lawsuit Against Public Participation” or "SLAPP” suit. SLAPP suits are retaliatory lawsuits designed to stifle expression.
The Assessor argues similarly that the Conservancy’s description of the use of Gibb House provides a rational basis for tax-exempt status, and questions petitioner’s motivation in contesting the exemption. Both respondents seek an award of costs and expenses in the defense of this proceeding.
I
The court first considers the issue of petitioner’s standing to contest the exemption for the Gibb House parcel. Petitioner contends standing is afforded by Matter of Dudley v Kerwick (52 NY2d 542), which petitioner interprets as holding that a taxpayer may challenge an exemption as resulting in a disproportionately unfair and inequitable increase in real estate taxes payable by petitioner and the other town property owners. The holding in Dudley (supra) actually appears significantly narrower in scope.
The issue posed in Dudley (supra) was whether "individual taxpayers may, by way of an article 78 proceeding, challenge wholesale religious exemptions from taxation granted to other property owners” (Matter of Dudley v Kerwick, supra, at 547 [emphasis added]). The court answered in the affirmative: "When an assessor grants exemption from taxation in wholesale fashion indicating that he has arrogated this legislative power to himself, he cannot cloak himself with protection *167 surrounding individual discretionary decisions, and relief by way of an article 78 proceeding will lie”. (Matter of Dudley v Kerwick, supra, at 551 [emphasis added].)
In so holding, the Court of Appeals disapproved the blanket exclusion of taxpayer standing in an earlier Court of Appeals case, Van Deventer v Long Is. City (139 NY 133, 138), but only to the extent Van Deventer (supra) was inconsistent with the result reached in Dudley (supra, at 551). Judge Gabrielli, who dissented in Dudley, found the majority holding at the least required allegations in the pleadings which " 'accuse the assessor of virtually ignoring statutory guidelines’ ” (Matter of Dudley v Kerwick, supra, at 556). More recently, in Matter of New York State Assn. of Tobacco & Candy Distribs. v New York State Tax Appeals Tribunal (159 AD2d 132, 136), the Appellate Division, Third Department, rejected an interpretation of Dudley (supra) similar to petitioner’s (cf., Matter of Campbell Oil Co. v Chu, 127 Misc 2d 281, 283).
The facts at bar are clearly distinguishable from Dudley (supra) in that there are no allegations of either a "wholesale” exemption or an arrogation of power by the Assessor. The petition, in essence, charges nothing more than an erroneous individual determination based on the Assessor’s purported failure to investigate the actual use of the Gibb House parcel. Strikingly absent is any specific factual basis by which to find petitioner is aggrieved. The apparent benefit to petitioner, in terms of his tax bill, of returning the approximately four-acre parcel to the tax roll is virtually nonexistent. The court, therefore, finds petitioner lacks standing.
II
Even assuming, however, petitioner had standing, the scope of judicial review of a municipality’s taxing authority is limited. A court may not interfere unless the action complained of is arbitrary and capricious (Economic Opportunity Commn. v Village of Hempstead, 148 AD2d 570; Matter of Church of Scientology v Tax Commn., 120 AD2d 376; Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn., 62 AD2d 188). Where a municipality seeks to withdraw a previously granted tax exemption, the municipality bears the burden of proving that the real property is subject to taxation (Matter of New York Botanical Garden v Assessors of Town of Wash., 80 AD2d 170, affd 55 NY2d 328). By extension, where a taxpayer seeks to have a tax exemption *168 withdrawn by the municipality, the taxpayer bears the burden. "[I]n view of the public interest against frequent second-guessing of assessment decisions, the burden the petitioners must carry in this case is not slight” (Matter of Dudley v Kerwick, supra, at 552).
The proof required in a special proceeding is similar to a motion for summary judgment in that the parties are obligated to submit their proofs with their pleadings "showing such evidentiary facts as shall entitle [them] to a trial of any issue of fact” (CPLR 7804 [e]). Here, petitioner’s allegations as to the use of Gibb House, which are made on information and belief, amount to nothing more than conjecture and are insufficient to rebut the Conservancy’s described use of Gibb House which is based on statements by persons having direct and personal knowledge such as the executive director (see, Matter of Gagnon v Board of Educ., 119 AD2d 674; Matter of 22 Park Place Coop. v Board of Assessors, 102 AD2d 893, 893-894).
The use of the premises described in a memorandum by the executive director to the Assessor in support of the exemption provided a rational basis for her to conclude Gibb House was primarily used for purposes integral and necessary to the operation of the Preserve. To the extent petitioner contests the need for a full-time steward, he merely asserts a disagreement of opinion. Such a difference does not establish the Conservancy is incorrect in its belief that a full-time steward is essential to maintaining the Preserve. Indeed, as pointed out by the Conservancy, the practice of providing housing for a resident watchperson is consistent with that followed elsewhere in places such as the Butler Sanctuary, the Westmoreland Sanctuary and Ward Pound Ridge Reservation in Westchester County, and the Uplands Farms and Mashomack nature preserves in Long Island. The fact, that Gibb House is not on the Preserve itself, is irrelevant since it is still near enough to the Preserve to infer a nexns between the functions performed by Gibb House and the Preserve (see, Matter of St. Luke’s Hosp. v Boyland, 12 NY2d 135; People ex rel. Clarkson Mem. Coll. of Technology v Haggett, 191 Misc 621, affd 274 App Div 732, affd 300 NY 595; Matter of Syracuse Univ., 124 Misc 788, affd 214 App Div 375).
There has also been no proof that the benefit to the executive director from the housing provided her and her family constitutes pecuniary profit that would defeat the exemption under RPTL 420-a (1) (a). RPTL 420-a (1) (b) specifically *169 permits "reasonable compensation for services” in effecting the organization’s purposes. Even imputing a reasonable rental value of the residential portion of Gibb House to the executive director, and combining that with her salary of $28,000 in 1990, the court is unable to conclude that the sum exceeds reasonable compensation for the services rendered.
Ill
Finally, the court finds petitioner’s stated interest in contesting the Gibb House markedly disingenuous. This matter has been tenaciously fought, no doubt at considerable expense to petitioner. It defies common sense that such intensive litigation would be pursued for an abstract interest. This is especially so where the challenger is not a resident of the town, who perhaps might have a personal and long-term concern for the town’s tax base, but rather a developer whose interests one would expect to be tied to a definite shorter-term monetary return.
Given the absence of any apparent real pecuniary benefit to petitioner from this litigation, if he were successful, the court can only conclude that petitioner’s motivation is that ascribed to him by the Conservancy — retribution against the Conservancy for opposing his development plans for the area around the Mianus Gorge, and an effort to chill the Conservancy’s future exercise of its First Amendment rights. With these goals, it is apparent that petitioner may well succeed, despite dismissal of the petition, simply by having forced the Conservancy to incur the expense of defending the exemption for the Gibb House parcel. Indeed, this lawsuit would appear to be the type of case warned of by Judge Gabrielli in his dissent in Dudley where he stated: "[Although individual property owners rarely have a substantial financial stake in the amounts collected from their fellow taxpayers, petty jealousies and rivalries may lead them * * * to bring vexatious lawsuits” (Matter of Dudley v Kerwick, 52 NY2d, supra, at 556).
Under the circumstances, the court finds that this proceeding was undertaken primarily, if not solely, to harass or maliciously injure the Conservancy. Such litigation constitutes "frivolous” conduct as the term is defined in 22 NYCRR 130-1.1 (c) (2) (see, e.g., Matter of Minister of Refrn. Prot. Dutch Church v 198 Broadway, 76 NY2d 411).
Abuse of the right to petition for judicial review should not be countenanced. As recently noted by Attorney-General Rob *170 ert Abrams at an environmental colloquium, the participation of citizen watch groups in environmental planning has been "essential to ensure that governmental efforts at environmental protection are fully effective.”[1] A number of citizen suits "have established essential principles of early review and strict adherence to the procedures laid out in SEQRA which have served as crucial tools in making projects safe for the environment”.[2] Citizen activism, if it is to continue, must be fostered and protected from lawsuits designed solely or primarily to intimidate and extract a price for participation.
22 NYCRR 130-1.1 (a) permits the court, in its discretion, to award costs for frivolous conduct in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney’s fees. An award appears appropriate in this case both as compensation to the Conservancy and as a deterrent against future abuse of the judicial system (cf., Hoeflich v Chemical Bank, 149 AD2d 341, 342).
The court reserves decision on the specific award to the Conservancy, however, pending a further opportunity to the parties to be heard (see, 22 NYCRR 130-1.1 [d]; see, e.g., Mechta v Mack, 154 AD2d 440, 441; Bruckner v Jaitor Apts. Co., 147 Misc 2d 796). Although costs and expenses were requested in the Conservancy’s answer, the Conservancy has not specified the nature of the expenses for which it seeks reimbursement or documented what its costs and expenses actually are. The Conservancy may submit proof of its costs and expenses in support of an award under 22 NYCRR 130-1.1 (a) by April 8, 1991. Petitioner may respond by April 22, 1991.
The Assessor’s request for costs and expenses is granted to the extent that she is awarded costs and disbursements pursuant to CPLR 8201 and 8301.
Petition is dismissed. Judgment may be settled, on notice, after resolution of the award to the Conservancy.

. Address by Attorney-General Robert Abrams, Center for Environmental Legal Studies, Pace University School of Law, White Plains, New York (Oct. 14, 1989).

. See, footnote 1, at 170.