[658 NYS2d 468]

In the Matter of New York Association of Convenience Stores et al., Respondents, v Michael H. Urbach, as Commissioner of the Department of Taxation and Finance of the State of New York, et al., Appellants.

Third Department, May 8, 1997

**APPEARANCES OF COUNSEL**

*Dennis C. Vacco, Attorney-General,* Albany *(Andrew D. Bing* and *Nancy A. Spiegel* of counsel), for appellants.

*Crane, Kelley, Greene & Parente,* Albany *(David M. Cherubin* and *James B. Crane, II,* of counsel), for respondents.

**OPINION OF THE COURT**

Cardona, P. J.

New York imposes sales and excise taxes upon cigarettes and motor fuel (*see,* Tax Law arts 12-A, 20, 28), but cannot

impose such taxes on sales of those products to enrolled tribal members on Indian reservations (*see, Moe v Salish & Kootenai Tribes*, 425 US 463). On-reservation sales to non-Indian consumers, however, are subject to such taxation (*see, Washington v Confederated Tribes*, 447 US 134). In 1988, respondent Department of Taxation and Finance adopted regulations (*see,* 20 NYCRR 336.6, 336.7, 414.6, 414.7) designed to require on-reservation retailers to pay sales and excise taxes upon sales of cigarettes and motor fuel to non-Indian consumers. Cigarette wholesalers doing business on Indian reservations commenced actions to enjoin the State's regulatory scheme (*see,* 20 NYCRR 336.6, 336.7) to enforce the collection of sales taxes on cigarettes; however, the actions culminated in a decision by the United States Supreme Court in June 1994 (*see, Department of Taxation & Fin. v Milhelm Attea & Bros.*, 512 US 61) upholding the State's regulations.

■ Nevertheless, according to the petition herein, respondent Commissioner of Taxation and Finance has failed to enforce said statutes and regulations. As a consequence, petitioners, trade organizations representing convenience stores and corporations owning and operating retail stores in New York engaged in, *inter alia*, the sale of cigarettes and motor fuel, commenced this CPLR article 78 proceeding seeking to compel respondents to determine, assess and collect cigarette and motor fuel excise and sales taxes relating to sales of those products by on-reservation retailers to non-Indian consumers and otherwise enforce the laws on a uniform basis. Respondents moved to dismiss the petition on the ground that petitioners lack standing to maintain the proceeding, which motion was denied. Thereafter, respondents answered, interposing objections in point of law. Supreme Court treated such objections as a motion for summary judgment and, *inter alia*, granted the petition in all respects. Respondents appeal.

The essential principle of standing is the notion of "injury in fact—an actual legal stake in the matter being adjudicated [which] ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute 'in a form traditionally capable of judicial resolution' " (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772, quoting *Schlesinger v Reservists to Stop the War*, 418 US 208, 220-221), which is "fairly traceable to the defendant's acts or omissions" (*Arlington Hgts. v Metropolitan Hous. Corp.*, 429

US 252, 261). The crux of petitioners' argument is that by failing to enforce the subject taxing statutes against on-reservation retailers, State officials are permitting those retailers, with whom petitioners must compete, to purchase cigarette and motor fuel products at lower wholesale prices, which in turn enables them to charge "discount" prices to non-Indian consumers, a fact which respondents have not seriously disputed. We note that the United States Supreme Court has found such competitive economic injury cognizable (*see, Clarke v Securities Indus. Assn.*, 479 US 388, 403; *Arnold Tours v Camp*, 400 US 45, 46; *Data Processing Serv. v Camp*, 397 US 150, 151; *cf., In re United States Catholic Conference*, 885 F2d 1020, 1029, *cert denied sub nom. Abortion Rights Mobilization v United States Catholic Conference,* 495 US 918). Accordingly, we find that petitioners have asserted sufficient injury in fact for standing purposes. The determination of standing, however, requires more than a showing of a cognizable injury in fact.

To the principle of injury in fact, courts at both the State and Federal levels have added a rule of self-restraint or "prudential limitation[ ]" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773, *supra*), that the interest or injury asserted must fall within "the zone of interests to be protected or regulated by the statute *or constitutional guarantee in question*" (*Data Processing Serv. v Camp, supra*, at 153 [emphasis supplied]). Thus, as the Court of Appeals has noted, "competitive injury, of itself, will not confer standing" (*Matter of Dairylea Coop. v Walkley*, 38 NY2d 6, 11). The competitive injury must be tied either to a statutory purpose, as it was in *Matter of Dairylea Coop. v Walkley (supra)*,[1] or to a violation of a constitutional guarantee, as is the case here.

In arguing that petitioners lack standing to maintain this proceeding because they are not within the "zone of interests" intended to be protected by the tax laws (*see,* Tax Law arts 12-A, 20, 28) and regulations (*see,* 20 NYCRR 336.6, 336.7, 414.6, 414.7), respondents misconstrue the nature of petitioners' challenge. Petitioners are not contesting the validity of the subject taxing statutes or an administrative determination rendered in violation of those statutes. Rather, petitioners challenge respondents' unequal enforcement of the statutes

---

1. In *Dairylea*, the Court of Appeals stressed that the milk dealer's standing to challenge administrative action, which extended the license of a competitor into its sales area, did not derive from competitive injury alone but from the overriding legislative purpose of the statute in question, which was the prevention of destructive competition in the milk industry.

and regulations. Petitioners argue, *inter alia*, that by their failure to uniformly enforce the mandated collection of taxes, respondents have engaged in discrimination violative of their right to equal protection as guaranteed by the Fourteenth Amendment of the US Constitution.[2] Thus, for standing purposes, we must decide whether petitioners' injury falls within the zone of interests sought to be protected by that constitutional guarantee.

The Equal Protection Clause prohibits a public authority from applying or enforcing an admittedly valid law in a discriminatory fashion between persons in similar circumstances (*see, Yick Wo v Hopkins*, 118 US 356, 373-374; *Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 693). In the case before us, it is clear that the failure to enforce the collection of sales and excise taxes on cigarettes and motor fuel sold by on-reservation retailers to non-Indian consumers has resulted in the unequal application of the taxing statutes and regulations to petitioners, who by statute (*see,* Tax Law arts 12-A, 20, 28), regulation (*see,* 20 NYCRR 336.6, 336.7, 414.6, 414.7) and case law (*see, Department of Taxation & Fin. v Milhelm Attea & Bros.*, 512 US 61, *supra*) are entitled to be treated alike (*see, Matter of Di Maggio v Brown*, 19 NY2d 283, 290).[3]

Although " '[t]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' " (*supra,* at 290, quoting *Oyler v Boles*, 368 US 448, 456; *see, Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 695, *supra*), when it is demonstrated, as it has been here, that the selection is based upon a suspect classification such as race, " 'a State must show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is "necessary * * * to the accomplishment" of its purpose or the safeguarding of its interest' " (*Regents of Univ. of Cal. v Bakke*, 438 US 265, 305, quoting *In re Griffiths*, 413 US 717, 721-722). Respondents argue that nonenforcement of the tax-

---

2. We note in passing that it does not appear that the local municipalities which border the Indian nations or any other government entity, such as the Comptroller, possess a substantial relationship with petitioners sufficient to entitle them to raise petitioners' equal protection claims (*see, Holland v Illinois*, 493 US 474, 489; *Singleton v Wulff*, 428 US 106, 114-115; *People v Kern*, 149 AD2d 187, 233, *affd* 75 NY2d 638, 654, n 3).

3. Notably, "[b]y whom, when and through what procedure or remedy, taxes shall be collected is a matter for legislative determination, subject to the rule that the procedure cannot be utterly unreasonable or arbitrary or *unequal and unjust in its operation*" (*Gautier v Ditmar*, 204 NY 20, 28 [emphasis supplied]).

ing statutes against on-reservation retailers has been necessary "to ensure an opportunity for reservation businesses to survive, and to avoid disruptive and potentially violent demonstrations" while they negotiate a diplomatic solution to the problem of collecting taxes from Indian nations and tribes protective of their sovereign status.

Referring to the first proffered reason, we note that it is not constitutionally permissible to "[p]refer[ ] [the] members of any one group for no reason other than race or ethnic origin [for, to do so,] is discrimination for its own sake" (*Regents of Univ. of Cal. v Bakke*, 438 US 265, 307, *supra*). As for the second reason, we acknowledge that protecting citizens from civil disorder is within the legitimate police power of the State (*see, Stotland v Pennsylvania*, 398 US 916, 920 [Douglas, J., dissenting]), but note that the exercise of that power is never paramount to the right of equal protection, save in those rare instances where civil disorder "threaten[s] the very existence of the State" (*supra*, at 920).

Based upon the above analysis, it is our view that the denial of equal treatment establishes petitioners' standing in this equal protection case (*cf., Northeastern Fla. Ch. of Associated Gen. Contrs. v City of Jacksonville*, 508 US 656).[4]

▋ With respect to the merits, mindful that "[t]he burden of proving a claim of discriminatory enforcement is a weighty one" (*Matter of 303 W. 42nd St. Corp. v Klein, supra*, at 694), we nevertheless are satisfied that petitioners have met their burden as a matter of law. They have shown, upon the record before this Court, that "a grossly disproportionate incidence of nonenforcement against others similarly situated" exists[5] and that "the only reasonable explanation for the pattern of

---

4. We note that Supreme Court grounded its determination of standing upon the Court of Appeals decision in *Matter of Dudley v Kerwick* (52 NY2d 542). In that case, the Court implicitly granted standing, without addressing the issue, when it upheld a real property taxpayer's right to challenge, in a CPLR article 78 proceeding, the action of a local assessor in granting wholesale religious exemptions to 88% of a town's landowners. While it can be argued that the type of *inaction* on the part of the State in the subject case is different from the governmental *action* challenged in *Dudley* (*see, supra; see also, Matter of New York State Assn. of Tobacco & Candy Distribs. v New York State Tax Appeals Tribunal*, 159 AD2d 132), we do not need to consider the import of *Dudley* in the case at hand due to our conclusion that petitioners have satisfied the traditional "zone of interest" test.

5. We note that respondents' submissions in this record, particularly the "Important Notice N-94-16", establish their awareness of the deliberate nonenforcement of the tax collection laws on the Indian reservations; although respondents intended to implement enforcement on December 1,

[non]enforcement" (*supra,* at 695) is a discriminatory purpose on the part of respondents, which, even though intended as benign (*see, Regents of Univ. of Cal. v Bakke,* 438 US 265, 294, *supra*), is based upon the impermissible standard of race.

We turn next to respondents' contention that Supreme Court abused its discretion in ordering, albeit as alternative relief,[6] the State-wide suspension of respondents' collection and enforcement of the sales and excise taxes on motor fuel and tobacco. While it is arguably true that petitioners' right to equal treatment can be attained either by requiring the collection and enforcement of the subject tax laws and regulations against on-reservation retailers or suspending collection and enforcement State-wide,[7] petitioners' demand for relief in their petition was limited to the former. Therefore, it was error for Supreme Court to have awarded such sweeping, undemanded relief without adequate notice of its intent to do so (*see, Matter of We're Assocs. Co. v Scaduto,* 206 AD2d 245).

CREW III, J. (dissenting). We respectfully dissent. In order to establish standing, petitioners must demonstrate that they have suffered an injury in fact, that such injury falls within the zone of interest that the underlying statute aims to protect or promote and that the injury alleged is different in degree or kind from that suffered by the general public (*see, e.g., Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761).

We agree with the majority that petitioners have suffered an injury in fact, inasmuch as they claim that respondents' failure to enforce the statutes and regulations at issue has placed them at a competitive disadvantage in relation to on-reservation retailers, resulting in a substantial loss of revenue. However, the Court of Appeals has made it clear that business competitive injury is insufficient to confer standing under the

---

1994, it is clear that no enforcement occurred prior to the argument of this appeal.

6. Supreme Court allowed respondents 120 days, which they indicated would be necessary, to implement and enforce the subject tax laws and regulations equally on all to whom they were applicable.

7. We note the possibility of an alternative means (other than the current regulatory systems) which may provide petitioners with the level "playing field" they seek for sales to non-Indian consumers. "States may * * * enter into agreements with the tribes to adopt a mutually satisfactory regime for the collection of [sales and excise] tax[es]" (*Oklahoma Tax Commn. v Potawatomi Tribe,* 498 US 505, 514). While this Court understands that the State has been engaged in negotiations of this nature, this court is bound by the record before it.

zone of interest requirement unless the statute in question is aimed at preventing disruptive competition (*see, Matter of Dairylea Coop. v Walkley*, 38 NY2d 6). Here, the relevant statutes and regulations unquestionably are designed to provide revenue for the State and local governments (*see*, Mem of Div of Budget, 1965 NY Legis Ann, at 432, 434) and any effect that such statutes and regulations may have upon competition is merely incidental to those goals (*see, Matter of Blue Cross v Cooper*, 164 AD2d 578, 580-581; *Arnot-Ogden Mem. Hosp. v Guthrie Clinic*, 122 AD2d 413, 414-415, *lv denied* 68 NY2d 612). Accordingly, petitioners have not established that their in-fact injury falls within the concerns sought to be promoted by the subject statutes and regulations and have, therefore, failed to establish standing on this basis.

To the extent that petitioners assert that they have taxpayer standing under *Boryszewski v Brydges* (37 NY2d 361), we cannot agree. In *Boryszewski*, which dealt with the ability of a taxpayer to challenge the constitutionality of a State statute providing lump-sum "lulus" in lieu of expenses for members of the Legislature, the Court of Appeals concluded that standing would be recognized in instances where "the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action" (*supra*, at 364). No such barrier exists here.

One of the cornerstones of the Court of Appeals decision in *Boryszewski* was that it was unrealistic to expect a State official to step forward to challenge the constitutionality of a statute that, in the case of the Attorney-General, he or she was obligated to defend or, in the case of an individual member of the Legislature, from which he or she stood to benefit. Here, however, even assuming that one could not rely upon the Attorney-General or the Legislature to seek enforcement of the underlying statutes, to the extent that the State is being deprived of tax revenues, surely the Comptroller would have the incentive to intervene, as would the affected local governments. Thus, this matter is distinguishable from *Boryszewski* and petitioners have not, in our view, established standing under the principles set forth therein.

In spite of the foregoing, petitioners maintain and Supreme Court found that the holding in *Matter of Dudley v Kerwick*

(52 NY2d 542) confers standing upon petitioners.* We disagree. Although we acknowledge that *Dudley* has gained limited recognition as a "standing" case (*see, Matter of New York State Assn. of Tobacco & Candy Distribs. v New York State Tax Appeals Tribunal*, 159 AD2d 132, 136; *Matter of Gordon v Marrone*, 151 Misc 2d 164, 166-167; *Matter of Campbell Oil Co. v Chu*, 127 Misc 2d 281, 283-284), it is important to note that *Dudley* contains no standing analysis whatsoever. In this regard, although *Dudley* makes passing reference to the Court of Appeals decision in *Boryszewski v Brydges* (37 NY2d 361, *supra*) and recognizes the then-recent trend of "liberalizing the ability of taxpayers to challenge governmental action" (*Matter of Dudley v Kerwick, supra*, at 551), it is unclear whether the standing implicitly found in *Dudley* was based upon the "impenetrable barrier to suit" doctrine set forth in *Boryszewski* or, instead, was grounded upon the "zone of interest" test recognized by the Court of Appeals in *Matter of Dairylea Coop. v Walkley* (38 NY2d 6, *supra*) and subsequently reaffirmed in *Society of Plastics Indus. v County of Suffolk* (77 NY2d 761, *supra*). Whatever the basis for the standing implicitly found to be present in *Dudley*, however, we would not be inclined to hold, absent some clear indication from the Court of Appeals, that *Dudley* automatically confers standing upon a petitioner who could not otherwise satisfy either the "impenetrable barrier to suit" or the "zone of interest" test simply because that petitioner has alleged that some sort of blanket exemption from taxation has been granted, which is precisely what petitioners contend has occurred here.

Nor are we persuaded by the majority that standing may be found based upon an alleged violation of the Fourteenth Amendment of the US Constitution. Assuming, arguendo, that the case at bar is amenable to an equal protection analysis, we take issue with the majority's conclusion that petitioners have established, as a matter of law, a grossly disproportionate incidence of nonenforcement against others similarly situated and, further, that the *only* reasonable explanation for the

---

* Our learned colleagues forego analysis of the *Dudley* case upon the basis that petitioners are not contesting an administrative determination made in violation of the statutes and regulations in question. We disagree. The petition specifically recites that respondents have failed to enforce said statutes and regulations resulting in a substantial loss of State revenues, as well as placing petitioners at a competitive disadvantage, and seeks injunctive relief compelling respondents to enforce the subject statutes and regulations. Quite clearly, petitioners are assailing respondents' determination not to enforce the statutes and regulations at issue.

nonenforcement of the subject statutes and regulations is based upon the impermissible standard of race (*see, Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 693). Nowhere in petitioners' submissions is there any statistical data to establish a grossly disproportionate incidence of nonenforcement. Additionally, petitioners, who bore the burden of establishing discriminatory enforcement (*see, supra*, at 694), offered no explanation whatsoever for the stated nonenforcement. Indeed, the only explanation contained in the record for nonenforcement of the subject provisions was proffered by respondents, to wit, that the State has endeavored to negotiate this issue with the Indian nations and tribes who, in turn, were reluctant to deal directly with the State absent the participation of the Federal Government, thereby compelling the State to observe diplomatic protocols to the same extent as would be necessary in an international negotiation with a foreign nation. An additional factor pointed to by respondents for their failure to precipitously enforce the aforesaid statutes and regulations has to do with the disruptive and potentially violent demonstrations that have resulted from similar enforcements in the past and which, indeed, are taking place as of this writing. Accordingly, we do not believe that petitioners have sustained their heavy burden of proving a claim of discriminatory enforcement. In any event, even assuming that petitioners made a prima facie showing of invidiously motivated selective enforcement, in considering the merits of such a claim an evidentiary hearing is mandated (*see, supra*, at 693).

Accordingly, we would reverse the judgment of Supreme Court and dismiss the petition.

WHITE and CASEY, JJ., concur with CARDONA, P. J.; CREW III and CARPINELLO, JJ., dissent in a separate opinion by CREW III, J.

Ordered that the judgments are modified, on the law, without costs, by deleting so much thereof as provided for the State-wide suspension of the enforcement and collection of the sales and excise taxes on motor fuel and tobacco, and, as so modified, affirmed.